**STATE of Missouri, Respondent,**

v.

**Bernard KING, Appellant.**

**No. WD 36983.**

Missouri Court of Appeals,
Western District.

April 22, 1986.

Cullen Cline, Butcher, Cline, Mallory & Covington, Columbia, for appellant.

Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J. Presiding, and SHANGLER and KENNEDY, JJ.

CLARK, Chief Judge.

Bernard King was convicted on two counts of sales of marijuana in violation of § 195.020, RSMo.Cum.Supp.1984. He appeals contending the exhibit consisting of the contraband should not have been received in evidence and that a tape recording made during one of the sales and received in evidence at trial was given undue emphasis during jury deliberations. Affirmed.

The facts of the offense and preceding and subsequent events are integral components of the primary point on appeal, the asserted taint of the exhibit necessary to establish sale of the controlled substance. The events commenced when Kenneth Bailenson volunteered the information to police that a dealer was selling drugs to students at Kemper Military Academy from a residence in Fayette. Bailenson had acquired the information from a fellow student, John Baumgardner, who had bought drugs from that location on prior occasions. Bailenson agreed to cooperate with the sheriffs of Howard and Cooper counties and with the highway patrol in a plan to make undercover drug purchases at the suspected location.

On April 25, 1984, Bailenson was strip searched in preparation for an undertaking to attempt a drug buy. He was given money and a car to use and was sent to the location given by his friend Baumgardner, followed by two police officers. En route, Bailenson picked up Baumgardner to provide an introduction because Bailenson was not a known or previous customer. Baumgardner was unaware of Bailenson's undercover role or that the activity was being conducted with police surveillance.

The pair arrived at the residence previously identified by Baumgardner as a drug house and there made a purchase of two "bags" of marijuana from a person later identified as appellant. On the return trip to Boonville, Bailenson and Baumgardner stopped at a convenience store and purchased a six pack of beer and, at the suggestion of Baumgardner, they smoked some of the marijuana bought from appellant. Bailenson subsequently said he joined in the use of the marijuana to avoid arousing Baumgardner's suspicion. After dropping off Baumgardner in Boonville, Bailenson rejoined the police officers and turned over to them the remaining marijuana which had not been consumed. The quantity was weighed at a laboratory and found to be approximately 30 grams. This sale was charged as the offense named in the first count against appellant.

A second attempt to purchase drugs from appellant was arranged on May 10, 1984, again with the use of Bailenson but without the participation of Baumgardner. A Columbia police officer, Himmel, assisted by searching Bailenson before the purchase and by outfitting him with a concealed recording transmitter. Himmel drove Bailenson to within one-half block of appellant's residence and observed as Bailenson concluded a purchase of marijuana from appellant. The transaction formed the basis for the offense charged in the second count against appellant.

In his first point of alleged trial error, appellant contends the unconsumed marijuana remaining from the first purchase made April 25 should not have been admitted in evidence because the exhibit was the product of illegal and outrageous police conduct. He argues that a prosecution may not be based on criminal activity by law enforcement and that sponsorship of the illegal enterprise by the police requires suppression of evidence procured in consequence of such conduct. He cites and relies on *State v. Hohensee*, 650 S.W.2d 268 (Mo.App.1982). In that case, the police hired two known criminals to commit a burglary of a business building, aided by a police officer as a participant in the crime. Hohensee acted as a lookout stationed a half block from the building and was the only one of the four participants who did not know the crime was actually a police exercise. The court held the over-involvement by the police in promoting the crime precluded prosecution of Hohensee.

The particular and unique significance of *Hohensee* in reported Missouri cases is its acceptance of outrageous police conduct alone as a ground to bar the prosecution of an accused. Under the *Hohensee* theory, the issue of outrageous conduct presents a question of law for the court. The consequence of a finding that law enforcement conduct became over-involved in the commission of the crime is not merely the exclusion of certain evidence but a dismissal of the case. Also worthy of note is the disavowal of entrapment as an element of outrageous conduct, and hence, an accused may not be prosecuted if the *Hohensee* defense is sustained even though the evidence demonstrates a predisposition of the accused to engage in the criminal conduct in issue.

No reported Missouri case prior or subsequent to *Hohensee* has been cited, or discovered through independent research, applying the outrageous conduct theory as a ground to discharge an accused. *Hohensee* cites *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), which does not itself adopt the outrageous conduct theory. A plurality of the justices held that the defense of entrapment was the only shield available to a defendant ensnared by police over-involvement, and that illegal activity by the police is best curbed by prosecuting the officers. A concurrence in result and a dissent reserved the prospect of ruling on a due process bar to conviction where outrageous behavior reached a demonstrable level.

*Hohensee* does cite two cases, *United States v. Twigg*, 588 F.2d 373 (3rd Cir. 1978), and *People v. Isaacson*, 44 N.Y.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78 (N.Y. 1978), in which the outrageous conduct theory was applied to order the accused discharged. In each, the defendant had, prior to solicitation by a police agent, not been engaged in criminal conduct, and only embarked on the illegal activity after solicitation by the police and with materials and aid from government agents. In both cases, it was conceded that a defense of entrapment was unavailable because in each, the facts showed a predisposition by the defendant to commit the crime. Both cases acknowledge the uncertainty of any well established doctrine in the light of *Hampton*, but suggest the effect of *Hampton* to be that a dismissal of a charge on due process grounds in the context of an insufficient entrapment defense has not been ruled out. *Isaacson* at 718, 378 N.E.2d at 81; *Twigg* at 378.

*Isaacson* offers some assistance in an attempt to raise the outrageous conduct concept to a level of at least generalized definitive boundaries. Illustrative facts branding police conduct as outrageous are there said to include (1) the manufacture by police of a crime which would not otherwise have occurred, (2) engagement by police themselves in criminal conduct, (3) use of appeals to humanitarian instincts, temptation of exorbitant gain or persistent solicitation to overcome the defendant's unwillingness to engage in the illegal activity and (4) a desire on the part of the police to obtain a conviction of the defendant without motive to prevent further crime or to protect the public. One or more of these

factors may be enough to brand the law enforcement conduct as outrageous.

The facts of *Twigg* and *Isaacson* deserve mention because they aid in fleshing out the otherwise amorphous character of "outrageous conduct." In the former case, Twigg and a co-defendant, Neville, were charged as a consequence of their participation in a laboratory established to manufacture "speed." A police informer, Kubica, recruited Neville to assist in setting up the laboratory and Neville enlisted the help of Twigg. The Drug Enforcement Administration supplied Kubica with a chemical ingredient for the process, which was difficult to obtain, and some glassware. The government also rented the farm house where the laboratory was installed. Although entrapment was not a defense available to Neville because he indicated no unwillingness to join the enterprise, and was not available to Twigg because he entered the scheme at the behest of Neville, not Kubica, the convictions were reversed on grounds of outrageous police conduct.

In *Isaacson*, a user and seller of drugs, Breniman, was arrested for allegedly possessing a controlled substance. He was physically abused and held without bail some three weeks. Although the substance found in his possession was analyzed and found to be caffeine, Breniman was not told the material was inoffensive, but he was led to believe he faced a long prison term. Under compulsion by the police, Breniman agreed to cooperate in attempting to set up a drug transaction. Among friends and acquaintances he contacted Isaacson who then was living in Pennsylvania. Breniman pleaded with Isaacson to help him arrange a drug transaction for the purpose of providing Breniman with funds to engage a lawyer and make bail. Isaacson at first declined but eventually was persuaded by persistent appeals from Breniman based on their friendship and Breniman's dire plight. The police had insisted that Isaacson be lured into New York state to make the case and Breniman also carried out this detail of his instructions, overcoming Isaacson's fear of New York drug laws. The opinion overturned Isaacson's conviction on the basis that police overreaching had violated conditions of fundamental fairness.

■ In the present case, appellant tacitly concedes that he may not raise a defense of entrapment because his prior sales of drugs reported by Baumgardner and his ability to supply marijuana to Bailenson when the two purchases charged here were made demonstrate a pre-disposition to commit the offense. An accused is entrapped only if a law enforcement officer or an agent acting for the police induces the accused to engage in conduct of a criminal nature when he was not ready and willing to engage in such conduct. *State v. Willis*, 662 S.W.2d 252, 255 (Mo. banc 1983); § 562.066, RSMo.1978.

■ Relying on *Hohensee*, appellant contends, inappropriately, that his motion to suppress the exhibit consisting of the marijuana sold to Bailenson should have been granted because the police became over-involved by supplying the car and money to Bailenson and by permitting Bailenson and Baumgardner to possess and consume marijuana. We say inappropriately because, if the doctrine of outrageous conduct applies, the relief applicable is quashal of the prosecution, not suppression of an item of evidence. Nonetheless, the doctrine is not available under the facts of this case even were it to be assumed, as *Hohensee* rules, that Missouri law would require acquittal, in some circumstances, of an accused who has no defense of entrapment. The activity by the police which resulted in the charges against appellant involved acceptable practice of law enforcement, particularly in drug related offenses.

The primary circumstance which distinguishes this case from *Hohensee* is that the criminal activity by appellant was under way before the police focused their attention on him and, in fact, was the reason the agent, Bailenson, was dispatched to make the drug purchase. As Baumgardner reported and as events later confirmed, appellant was maintaining a supply of drugs

which he was selling to students at the military school. The criminal conduct was neither instigated nor fostered by any police encouragement. It was ongoing and presumably would have continued irrespective of whether Bailenson had been furnished the car and money. Moreover, there is no basis under the evidence to conclude that use of Bailenson tempted appellant to make a sale he would not otherwise have made from his stock of drugs to any other customer who appeared with proper recommendation.

A second factor urged by appellant, and perhaps relied on principally, contends that outrageous conduct must be found because as a result of the police activity, Bailenson and Baumgardner committed the offense of possessing marijuana. As the *Isaacson* case suggests, one indicia of outrageous conduct is the commission of criminal acts by the police or their agents. Such was certainly the case in *Hohensee* where the police actually committed a burglary including forced entry into premises and the theft of property.

█ The cases cited and the rationale of the doctrine indicate that the criminal conduct by police which will provide an accused with the defense of outrageous conduct is some activity which aids in commission of the crime for which the defendant stands accused. In *Hohensee*, it was participation by the police as burglars and in *Twigg*, the role of the informant as the principal in setting up and actually operating the drug laboratory. Without the illegal acts of the police or their agents in both cases, the crimes would not have been committed.

In the present case, the crime charged against appellant was completed prior to the acts of Bailenson and Baumgardner and the arrest could validly have been made at appellant's front door before Bailenson commenced the return journey to Boonville. Whether the marijuana was retained by Bailenson for a period of time or immediately turned over to the police had no effect whatever on appellant's conduct or on the extent or nature of the offense.

In addition, there is doubt as to whether Bailenson's possession of the marijuana was an offense at all. The statute, § 195.-240, RSMo.1978, provides an exemption for officers or employees of law enforcement agencies who possess any controlled substance in the performance of their official duties. That protection should certainly extend to an unpaid informant who, at police direction, makes a drug purchase for the purpose of lodging a criminal charge against the seller.

The use by Bailenson of some of the marijuana could arguably dilute the immunity the statute would otherwise provide and, of course, the immunity would not extend to Baumgardner who had no knowledge he was aiding the police. If there were any criminal conduct by either Bailenson or Baumgardner, or both, it was irrelevant to and unconnected with the criminal act of appellant and could have had no influence at all on his own choice to make the unlawful drug sale. In this circumstance, the suggestion in *Hampton* that the offenders themselves be prosecuted rather than permitting the accused to go free is a particularly appropriate response.

For the reasons stated, the defense of outrageous police conduct is rejected in the circumstances of appellant's case.

█ In a related point, appellant contends the exhibit of the marijuana should not have been admitted because the chain of custody was not established. He bases the argument on the acknowledged fact that Bailenson and Baumgardner opened the bags of marijuana and smoked some of the contents. On this account, he says there was no assurance the contents of the bags as received from appellant by Bailenson had not been altered or a substitution made.

In *State v. Smith*, 688 S.W.2d 813 (Mo. App.1985), a marijuana possession case, the defendant was in a car and was allegedly in possession of a metal candy can which contained marijuana. Upon the arrival of the police, the defendant got out of the car and

fled on foot. The can remained in the car but had overturned and the contents were spilled. They were retrieved, placed in an evidence container and sent to the laboratory. There as here the defendant claimed the marijuana should not have been admitted in evidence because there was no assurance the contents from the box had not been altered or substituted. The court held the evidence from the police officers that the contents of the box had been retrieved was sufficient to make a case for the jury on the issue of alteration or substitution.

The *Smith* case presented possibilities for alteration or substitution not present here where the only difference in the contents of the bags was the removal of some of the marijuana. To establish a chain of custody, it is unnecessary for the police to account for hand-to-hand transfers. It is enough if there is reasonable assurance the exhibit remains the same. *State v. Starr*, 676 S.W.2d 311 (Mo.App.1984). There was sufficient proof here under the evidence. It is immaterial to the charge that the quantity of marijuana was less than that delivered by appellant to Bailenson.

In his final point, appellant says the trial court abused its discretion in allowing the jury to review the tape recording made during the conversation between appellant and Bailenson when the latter made the drug purchase on May 10, 1984. The point rests on appellant's claim that the jury re-examined (presumably played) the tape recording while it was deliberating on its verdict. Review of the record in the case does not support the claim that the jury requested the exhibit be supplied during deliberations, that the exhibit was ever sent to the jury room or that it was examined during deliberations. In the absence of any record on the point, there is no issue to review on appeal. *State v. Greathouse*, 694 S.W.2d 903, 910 (Mo.App.1985).

The judgment is affirmed.

All concur.