Pamela Sue (Hurd)
**BRAYFIELD, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 15017.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 4, 1987.

Motion for Rehearing or Transfer
Denied Sept. 25, 1987.

Application to Transfer Denied
Nov. 17, 1987.

Donald L. Clough, Springfield, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Movant, Pamela Sue (Hurd) Brayfield, appeals from a denial, after evidentiary hearing, of her Rule 27.26[1] motion to set aside a judgment and sentence for distribution of a controlled substance (§ 195.020 RSMo 1978—now repealed and replaced). This court affirmed the conviction in *State v. Hurd,* 660 S.W.2d 388 (Mo.App.1983).

Movant's first point is that the trial court erred in ruling that the evidence [at the motion hearing] was insufficient to show "outrageous police conduct," and in failing to grant relief on that ground, because the "uncontroverted evidence" showed:

(1) Jackie White, a police informer, while in the company of Officer Foster, called movant and wanted movant to go and get them some "crank"; (2) movant did not want to do it but, after Jackie White begged her, movant consented; (3) movant had no money so Jackie White offered to cash a check for her; (4) Officer Foster and Jackie White came to movant's home, cashed a check for her, and then took her to the home of Clyde and Brenda Williams where the drugs were purchased; (5) Jackie White told movant where she could purchase the drugs.

In her argument under her first point, after repeating the foregoing "facts," movant states:

"The above facts are uncontroverted and from these facts, it would appear that Jackie White is guilty of 'possession' and that Officer Foster is guilty of a 'sale' or 'distribution.' It would also appear that this was outrageous police conduct."

Movant relies primarily on *State v. Hohensee,* 650 S.W.2d 268 (Mo.App.1982), where this court held that government action in sponsoring a burglary, in which defendant participated as a lookout, was outrageous and that the due process rights of the defendant barred the state from invoking judicial processes to obtain his conviction for the burglary.

■ For several reasons movant's first point lacks merit. As the state's brief points out, an issue which could have been raised on direct appeal, even though it is a constitutional claim, may not be raised in the post-conviction proceeding, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances. *Bradford v. State,* 694 S.W.2d 760, 761[1] (Mo.App.1985). Movant makes no showing that this claim could not have been raised on direct appeal or that the circumstances were so exceptional that fundamental fairness permits the claim to be made now.

Further, movant's first point lacks factual support. Although Jackie White, at the motion hearing, testified to the general effect set forth in movant's first point, such was not her testimony at the jury trial itself. The transcript of the jury trial was introduced into evidence at the motion hearing by movant.

At the jury trial Jackie White testified that on April 14, 1981, while working as a paid police informant, she telephoned movant for the purpose of arranging a purchase of "crank," an amphetamine, which is a controlled substance. Movant told Jackie that movant needed some crank also. Pursuant to the latter purpose, mov-

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court.

ant gave Jackie a check which Jackie took to a bank and cashed. Jackie then gave the cash to movant. Foster, a police officer who was acting with Jackie and whose official status was unknown to movant, accompanied Jackie to movant's house. Movant had previously told Jackie that she knew where she could get some crank. The trio went to the house of Clyde and Brenda Williams.

On arrival at the Williams residence, movant told Foster and Jackie that they would have to wait in the car because Williams "was paranoid of people he did not know as far as selling drugs to them." Foster testified, at the jury trial, that movant told him that she would buy a gram of crank for Foster and a gram for herself at $75 a gram. Foster gave movant $75. She entered the Williams residence and, ten minutes later, returned with two packages, each containing a gram of amphetamine. Movant gave one package to Foster and kept the other one. Inferentially movant used her own money, the proceeds of the check, to pay for her package.

Significantly, at the jury trial, Jackie White testified that she did not "put any pressure on [movant] to sell that crank to Foster." At the motion hearing, on the other hand, Jackie White testified that when she asked movant to get some crank, movant "did not want to do it.... I pretty much begged her to do it." The trial court, in its order denying the motion, rejected Jackie White's testimony at the motion hearing to the general effect that movant's participation in the distribution of the amphetamine, and the sale which preceded it, was involuntary and the product of Jackie's coercion.

■ The trial court was not bound to accept movant's evidence, including the testimony of Jackie, at the motion hearing as true even if it were uncontradicted. *Bradley v. State*, 494 S.W.2d 45, 48 (Mo.1973); *Floyd v. State*, 518 S.W.2d 700, 703[5] (Mo. App.1975). The trial court's findings with respect to the credibility of Jackie's testimony at the motion hearing is entitled to deference. *Gallimore v. State*, 660 S.W.2d 458, 459[2] (Mo.App.1983). Appellate review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j). The trial court properly denied relief.

Movant's argument that Jackie White was guilty of "possession" and Officer Foster was guilty of a "sale" or "distribution" of amphetamine overlooks § 195.240 which reads, in pertinent part: "The possession, sale, distribution, or transfer of any controlled substance listed in Schedul[e] III ... is unlawful, except in the usual course of business or practice, or in the performance of their official duties by the following persons: ... (4) officers or employees of appropriate enforcement agencies of federal, state or local governments, pursuant to their duties in enforcing the provisions of this chapter."

The trial court's ruling that the evidence at the motion hearing was insufficient to show "outrageous police conduct" was not clearly erroneous. Under the circumstances it is unnecessary to consider the possible validity of movant's first point if it had factual support. See generally, however, *State v. King*, 708 S.W.2d 364, 367 (Mo. App.1986), where the doctrine of outrageous conduct, applied in *Hohensee*, was held inapplicable in a prosecution for sale of marijuana, where the "activity by the police which resulted in the charges against appellant involved acceptable practice of law enforcement particularly in drug related offenses." Movant's first point has no merit.

■ Movant's second point is that she was entitled to relief on her motion, and the trial court erred in ruling otherwise, because movant was denied effective assistance of counsel at the jury trial. Specifically, movant claims that her trial counsel, Ty Gaither, was ineffective for the following reasons:

(1) Gaither failed to file a motion in connection with outrageous police conduct and did not realize that the outrageous police conduct would have forbidden criminal prosecution of movant.

(2) Gaither gave movant significant misleading advice upon which she relied in that he advised movant that she was not guilty of any crime but was simply doing a favor for a friend, and Gaither had movant take the stand and admit all the elements of the alleged crime.

(3) Gaither failed to interview alibi witnesses and did not obtain copies (sic) of a check which would have shown movant could not possibly have been present at the time and date of the alleged crime.

These reasons, each lacking merit, will be discussed in order. Familiar principles applicable to this type of proceeding must be kept in mind.

"The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.... In order to prevail, the defendant must show *both* that counsel's representation fell below an objective standard of reasonableness ... *and* that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Emphasis added.)

*Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986).

With regard to the requirement that the defendant must show "that counsel's representation fell below an objective standard of reasonableness," it was incumbent on movant to show in this proceeding that Gaither failed "to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances and that movant was prejudiced thereby." *Grant v. State,* 729 S.W.2d 631, 633[1] (Mo.App.1987). The Eastern District of this court has pointed out that "[A]n attorney handling a trial is in a better position than anyone else to know how a witness's testimony may help or hinder his client." *Stokes v. State,* 688 S.W.2d 19, 24[14] (Mo.App.1985). "Even

the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

"[W]here a claim of ineffective counsel is raised in a post-conviction proceeding and the attorney conduct involves the exercise of a choice in the presentation of the defense or the procedures selected in trial, the claim must fail if, within a wide range of reasonable professional assistance, the choice may be considered sound trial strategy. Of necessity, each case must be evaluated on its facts. A strong presumption of right action, however, severely limits such ineffective assistance claims to the end that it will be the rare exception where a strategic choice is declared to have been unsound."

*Porter v. State,* 682 S.W.2d 16, 19 (Mo.App. 1984).

This court's discussion of movant's first point is dispositive of reason (1) of movant's second point. There was no factual basis on which to predicate a motion to dismiss for outrageous police conduct and Gaither's failure to file a baseless motion did not constitute ineffectiveness of counsel.

Reasons (2) and (3) of movant's second point will be considered together. At the motion hearing Attorney Gaither, called as a witness for movant, testified: "Pam [movant] thought she was guilty of no crime. I do not believe that I told her she was not guilty of a crime. I believe I told her that if she went to trial that she had a good chance—that she might be able to beat the charges against her, but under the facts, as they were presented at trial and as I read them in the police reports,[2] there was in my opinion a question of fact whether or not she was guilty of a crime, and I feel that way yet today."

Gaither further testified: "Pam took the stand [in the jury case] and testified she went to the Williams house and obtained some drugs ... that she used the money

2. At the motion hearing movant did not introduce "the police reports" or any other evidence reflecting their contents.

given to her by the police to buy them ... [and] she gave the drugs to the police officer. I would say ... that pretty well made the case of distribution against Pam.... In my closing argument I argued that Pam was guilty of no crime because she was simply doing a favor for a friend. I told the jury 'The only thing they have in this case, folks, is distribution to a friend [Jackie], a friend who is being victimized, whose husband is in jail.' "

Gaither further testified: "With regard to April 14, the date of the alleged crime, Pam and I did discuss an alibi defense. I don't believe I sent my investigator, nor did I go and talk to the witnesses about this. I don't recall Pam saying anything about renting a U–Haul trailer in Ava on April 14.... In my investigation I determined that Jackie White was allowed to commit illegal acts. During my investigation I found out that Jackie had been to Pam's 10 or 11 times ... to try to obtain drugs from her or to obtain drugs from her. Pam and I discussed the entrapment as a defense. I remember why entrapment was not used as a defense. There had been a prior sale or sales made by Jackie to Pam (sic).[3] Once you begin to introduce the entrapment defense, the fact that there would have been evidence of prior sales or other crimes could have been brought forward to show her predisposition to commit sales. That was the main reason we did not want to present an entrapment defense. I did not want evidence of prior sales to Jackie, prior drug usage, that type of information to come before the jury. At the jury trial [movant] was charged with sale, as well as with distribution, so I was defending against two distinct cases. The judge had let in information on a sale that in my opinion should not have been admissible on distribution. That was the reason I asked that the prosecution elect before trial, but they were not required to do so. I was defending against a sale and a distribution. There was a lot more evidence they could

have brought in that they didn't bring in so I still did not, during the course of the trial, want to proceed with an entrapment defense.

"The conduct of the police is so out of line as to be reprehensible ... I don't see it as a legal defense but something I believe can be argued in mitigation of punishment. The testimony that Jackie White gave at the trial was quite favorable to my theory of defense. As a matter of fact we had subpoenaed Jackie White as a witness.

"The theory of defense was that the actions and conduct of the police were so reprehensible that I felt that a jury of citizens would feel that the true criminals were the police when they were made aware of the things the police had done, when the jury was made aware of the things the police had done to Jackie, to make her snitch, the things they had done in order to try to get a conviction on Pam, that while the chances were good that they may convict her, that the punishment would be extremely mitigated and she would receive a very light sentence, if not in fact an acquittal. As part of my theory of defense I wanted a jury sentencing. I did not want a judge sentencing.

"Eliciting some incriminating evidence from Pam on the stand was in accordance with my theory of defense. I did not feel that she should get up and deny that this happened and then try to say the police conduct was so reprehensible that she should not be punished for it. It was sort of a quasi-entrapment type of defense. It would be necessary for her to admit her guilt but to place her guilt in light of the surrounding circumstances and the conduct of the police. That was the theory of my case—to be honest with the jury, to admit her guilt, to let the jury know the facts surrounding her guilt, why this came about, and the conduct of the police in bringing about this so-called sale or distribution.

**3.** At the jury trial Jackie testified that a week or so prior to April 14, the date of the offense on trial, Jackie bought some crank from Pam. The foregoing evidence was introduced by the state over the objection of Attorney Gaither. On the basis of that evidence, Gaither, during the instruction conference at the jury trial, requested an instruction on entrapment but the court refused to give same.

"I discussed alibi and some of the witnesses who would be involved in such an alibi with Pam and decided that an alibi would be an inappropriate defense in this case. I believe the credibility of some of her witnesses was in question. Moreover, alibi, in and of itself, predisposes (sic) a misidentification. If you assert an alibi you have to prove they have obviously misidentified the person involved. We had a police officer who was well aware of Pam, had known her for quite some time, and we had a supposed friend of Pam's, Jackie, who had known her for a period of time, both of whom were going to testify that this action happened. I felt under those circumstances to tender an alibi defense would strain the jury and would be an inappropriate defense to follow."

Testifying in her own behalf at the motion hearing, movant testified that on the day of the alleged offense, April 14, 1981, she drove from Springfield to Ava where she rented a U–Haul truck and gave a check, movant's Exhibit 4, for the rental. Movant also testified that on April 3, 1981, she gave a check, movant's Exhibit 2, to Jackie White. That check, according to movant, was given on the date of the trip by Foster, Jackie and movant to the Williams house where the crank was obtained.

Movant's Exhibits 2 and 4 were admitted into evidence. According to the record, Exhibit 4 was in the amount of $144.38 but "had no payee." Neither exhibit has been presented to this court on this appeal. The record does not show whether either check contained any bank-stamped notations which might render authenticity to their respective dates. The probative value of Exhibit 4 is questionable because it had no payee and because it was only a copy of the purported check. Movant was unable to account for the whereabouts of the "original" check of which Exhibit 4 purported to be a copy.

In essence, movant's testimony in the motion hearing was that she obtained crank from Williams and delivered it to Foster, but that she did so on April 3 and not on April 14.

At the motion hearing movant produced several alibi witnesses, some of whom were relatives, who testified that on April 14, during the hours of the alleged distribution of crank, movant was in Ava.

In his order denying relief, the trial court stated:

"The Court finds that the performance of Movant's attorney conformed to the degree of skill, care and diligence required of a reasonably competent attorney under similar circumstances. Nevertheless, there is no showing that the pretrial and trial decisions made by Movant's attorney prejudiced Movant. In light of Movant's testimony at trial, which is the same testimony that undoubtedly would have been presented to Judge Keet on a plea of guilty, it is not likely that alleged alibi witnesses would be accepted or believed by the jury.... [T]he evidence presented showed that trial counsel possessed the ability to make logical decisions concerning the value of certain strategies and employed those skills in a manner consistent with the interest of Movant. After a jury verdict and a sentence, it is not unusual to overlook the fact that trial decisions are based on evaluations of various options available at the time. Trial results should not be confused with the validity of trial strategy."

This is an unusual, perhaps unique, case. It does not often happen that a criminal defendant takes the stand and testifies to facts which amount to a confession. The trial court felt that the trial strategy adopted by Attorney Gaither was not the result of a lack of professional competence. Gaither's rationale was that, given all the facts, a jury was likely to impose a lighter punishment, if any, than would a sentencing judge on a plea of guilty. It must be remembered that movant herself, at the motion hearing, admitted commission of the offense of distribution of a controlled substance to Foster, although she disputed the date of that transaction.

This court holds that the findings, conclusions and judgment of the trial court are

not "clearly erroneous." Rule 27.26(j). Movant's second point has no merit.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.