STATE of Missouri, Respondent,

v.

Alphonzo ADAMS, Appellant.

Alphonzo ADAMS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 42944, WD 44937.

Missouri Court of Appeals,
Western District.

Oct. 27, 1992.

ULRICH, Presiding Judge.

Alphonzo Adams was convicted by a jury on October 24, 1989 of four counts of selling a controlled substance in violation of § 195.200, RSMo 1986. The Circuit Court of Cole County sentenced Mr. Adams as a prior offender to four concurrent ten-year terms of imprisonment on January 16, 1990. Mr. Adams subsequently filed a Rule 29.15 motion for postconviction relief which was denied following an evidentiary hearing. Mr. Adams appeals both his convictions and the denial of his postconviction relief motion, and his appeals are consolidated. The circuit court's judgment of conviction is affirmed. The motion court's judgment denying his Rule 29.15 postconviction motion is affirmed.

Mr. Adams raises four points in his consolidated appeal. Mr. Adams contends that (1) the trial court erred in denying his motion to dismiss the charges against him because the state entrapped him and engaged in outrageous conduct in violation of his constitutional right to due process of law; (2) the motion court erred in denying as untimely his Rule 29.15 motion because the absolute filing deadline imposed by Rule 29.15 operated to deny his constitutional right to due process of law; (3) the motion court erred in finding that he filed his amended Rule 29.15 motion out of time because the court violated Rule 29.15(f); and (4) the motion court erred in denying his Rule 29.15 motion and finding as fact that he had received effective assistance of counsel because his counsel had a duty to pursue his claim that Cole County jury selection procedures violated his right to a fair cross section of the community.

Around June 1988, Mr. Adams began renting an apartment managed by Leonard Scott Stone. Mr. Adams and Mr. Stone had apartments in the same building. They became friends and occasionally shared drugs.

Around November 28, 1988, Mr. Adams received a letter from the apartment landlord stating that his rent was in arrears for part of October and all of November. The letter threatened eviction if payment was not made. Mr. Adams discussed this mat-

John Klosterman, St. Louis, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

ter with Mr. Stone, who had collected the rent monies. Mr. Stone assured Mr. Adams that the arrearage was due to secretarial error.

In late November or early December of 1988, the landlord contacted the Jefferson City police department and asked for assistance in a civil investigation involving Mr. Stone, who had been stealing rent money to buy drugs. The landlord and Detective Stephen R. Lochhead, a narcotics officer with the Jefferson City police department, confronted Mr. Stone. In exchange for the landlord's promise not to prosecute, Mr. Stone agreed to pay back the stolen money and to work as an informant for the Jefferson City police department. An investigation quickly focused on Mr. Adams because Mr. Stone identified him as his source for narcotics. Mr. Adams had previously been convicted for possession and sale of drugs.

Under police direction, Mr. Stone arranged four drug transactions with Mr. Adams. These sales occurred December 11, 1988, December 21, 1988, January 15, 1989, and January 20, 1989. Prior to each transaction, Mr. Stone was fitted by police with a wiring harness, a microphone, and an antenna to wear underneath his clothing for the purpose of recording the transaction. During each transaction, the voices of the participants in the drug transaction were transmitted by the device worn by Mr. Stone to a receiver in a vehicle occupied by Detective Lochhead who heard the voices.

Mr. Stone contacted Mr. Adams in his apartment and asked him if he could obtain cocaine. Mr. Stone stated he had the money to pay for the drugs. During each of the four transactions, Mr. Adams left the apartment building for a while and returned with cocaine. The cocaine was weighed on a jeweler's scale, tested for impurities, and handed to Mr. Stone. Mr. Stone then paid for the cocaine.

Immediately after each sale, Mr. Stone met with Detective Lochhead at a predetermined location. Detective Lochhead field-tested the cocaine, placed it in an evidence bag, and marked it with the time and date. Later, Detective Lochhead delivered the drug to a laboratory, which tested and identified the drug as cocaine.

Following a jury trial, Mr. Adams was convicted on October 24, 1989 of four counts of selling cocaine. The trial court sentenced him to four concurrent terms of 10 years confinement. Mr. Adams filed his notice of appeal on January 25, 1990.

On April 27, 1990, the transcript on appeal was filed with this Court. On May 31, 1990, Mr. Adams filed his *pro se* Rule 29.15 postconviction motion seeking to set aside his convictions and sentences.

On June 18, 1990, the appellant was granted an additional 30 days in which to file an amended motion. The amended motion was not filed until August 10, 1990.

On April 23, 1991, an evidentiary hearing was held in connection with Mr. Adams' Rule 29.15 motion. The motion court entered findings of fact and conclusions of law, together with an order overruling Mr. Adams' motion. The motion court found that: (1) Mr. Adams' *pro se* Rule 29.15 motion was filed more than 30 days from the filing of the transcript on appeal and was therefore time-barred and procedurally waived under Rule 29.15(b); (2) Mr. Adams' amended Rule 29.15 motion was not filed within the 30 days provided for in Rule 29.15(f) or within the additional period of time granted by the court under Rule 29.-15(f) and, therefore, was also time-barred and procedurally waived; and (3) even if the motions had been timely filed, the issues in those motions were without merit.

## I. DIRECT APPEAL

Mr. Adams contends as point (1) that the trial court erred in denying his motion to dismiss the charges against him because the state entrapped him and engaged in outrageous conduct in violation of his right to due process of law as guaranteed by the fourteenth amendment of the United States Constitution and article I, section 10 of the Missouri Constitution, in that the State's evidence established entrapment as a matter of law. Mr. Adams maintains he was an unwilling participant in each of the four drug transactions. Mr. Adams claims he

sold controlled substances to Mr. Stone only after repeated requests by Mr. Stone, which Mr. Adams consistently refused, and only under the threat of eviction from his apartment.

■ The defense of entrapment has been legislatively codified in Missouri in § 562.066.2, RSMo 1986, which provides:

> An **"entrapment"** is perpetuated if a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct.

To prove entrapment, the statute requires proof of both (1) inducement to engage in unlawful conduct and (2) an absence of willingness to engage in such conduct. Section 562.066.2, RSMo 1986, *State v. Willis*, 662 S.W.2d 252, 255 (Mo. banc 1983).

■ The defendant has the initial burden of going forward with evidence showing both unlawful governmental inducement and the defendant's lack of predisposition. Section 562.066.4, RSMo 1986; *Willis*, 662 S.W.2d at 255. The State then has the burden of proving lack of entrapment beyond a reasonable doubt. *Willis*, 662 S.W.2d at 255. The State may do so either by rebutting the defendant's evidence of inducement or by showing his or her predisposition. *Id.*

■ If the defendant has injected the issue of entrapment into the case and the State's case contains no evidence of entrapment, entrapment is not established as a matter of law. *Id.* at 257. The fact finder is free to reject the defendant's allegations and conclude he was not unlawfully entrapped. *Id.*

Mr. Adams asserted entrapment as a defense in his jury trial. He claimed he was induced to participate in the drug transactions by Mr. Stone's repeated solicitations and by the implicit threat of eviction from his residence. The State introduced no evidence confirming Mr. Adams' version of events. To the contrary, the State contended Mr. Adams was not motivated by the fear of losing his apartment and that Mr. Adams was ready and willing to supply Mr. Stone with drugs on request.

■ The State further rebutted Mr. Adams' allegation of entrapment by introducing evidence of Mr. Adams' predisposition to engage in the sales. Evidence of a defendant's prior use, possession, or sale of drugs, or ability to supply drugs upon request constitutes evidence of predisposition sufficient to negate a defense of entrapment. *State v. Hauck*, 804 S.W.2d 811, 813 (Mo.App.1991); *State v. King*, 708 S.W.2d 364, 367 (Mo.App.1986); *State v. Coffman*, 647 S.W.2d 849, 852 (Mo.App.1983); *State v. Horton*, 607 S.W.2d 764, 766 (Mo.App. 1980). Mr. Adams' admissions that he intravenously used drugs, his prior convictions for the possession and sale of drugs, testimony that he was Mr. Stone's drug source, and his ability to procure the drugs Mr. Stone requested all constitute evidence that Mr. Adams was predisposed to sell controlled substances and that he was not entrapped as a matter of law.

Because the State's case contained no evidence that Mr. Adams was entrapped, entrapment is not established as a matter of law. The jury was instructed on entrapment and rejected this defense, which it was free to do. Mr. Adams' entrapment defense fails on appeal.

■ Mr. Adams may be attempting to raise the defense of outrageous government conduct as part of his first point on appeal. Mr. Adams states in his first point relied on that the trial court erred in denying Mr. Adams' motion to dismiss because the State "engaged in outrageous conduct ... in that the State's evidence established entrapment as a matter of law." Outrageous government conduct is distinct legal theory, separate from the defense of entrapment. Unlike entrapment, which focuses on the subjective intent of the accused to commit the crime charged and is a question of fact for the jury, *Willis*, 662 S.W.2d at 254; *State v. Worstell*, 767 S.W.2d 352, 353 (Mo.App.1989), outrageous government conduct concerns the overinvolvement of the police in the commission

of a crime and is a question of law for the court. *King*, 708 S.W.2d at 366. Outrageous conduct may be available as a defense when entrapment is not, for predisposition of the accused to engage in criminal conduct will not bar the accused from successfully asserting the defense of outrageous conduct, while such predisposition would preclude an entrapment defense. *King*, 708 S.W.2d at 366.

■ When the defense of outrageous conduct is raised, the court must determine if police conduct was so "outrageous" that fundamental fairness prohibits prosecution of the accused. *State v. Hohensee*, 650 S.W.2d 268, 271, 272 (Mo.App.1982). Facts tending to show outrageous conduct by police include the following:

> (1) the manufacture by police of a crime which would not otherwise have occurred, (2) engagement by police themselves in criminal conduct, (3) use of appeals to humanitarian instincts, temptation of exorbitant gain or persistent solicitation to overcome the defendant's unwillingness to engage in the illegal activity and (4) a desire on the part of the police to obtain a conviction of the defendant without motive to prevent further crime or to protect the public.

*King*, 708 S.W.2d at 366.

■ In this case, the fact that Mr. Adams previously acquired drugs for Mr. Stone and himself, and the effort Mr. Adams exhibited to obtain the contraband drugs when Mr. Stone solicited the drugs negate any argument that but for the police involvement, the crime would not have occurred. The police did not engage in criminal conduct, for the activity which resulted in the charges against Mr. Adams involved an acceptable practice of law enforcement, especially in drug-related offenses. *See State v. Jay*, 724 S.W.2d 293, 295–96 (Mo.App.1987) (use of a paid informant who was an admitted drug user and who was sought by law enforcement officers from a sister state was not outrageous governmental conduct); *King*, 708 S.W.2d at 367–68 (receipt and use by police informant of drugs sold to him by defendant was not outrageous conduct).

Although Mr. Adams claimed he only participated in the drug sales after repeated requests by Mr. Stone and under the threat of eviction from his residence, Mr. Adams' testimony is the only evidence of his version of events. The State's evidence showed that Mr. Adams was ready and willing to engage in the illegal transactions.

Finally, the motives of the Jefferson City police department pose no obstacle to Mr. Adams' conviction. Mr. Stone, prior to the four drug sales, identified Mr. Adams as his source of contraband drugs. Mr. Adams introduced no evidence indicating that the motives of the police department were anything other than to stop the sale of illegal drugs in Jefferson City, an acceptable incentive.

Mr. Adams failed to establish either entrapment as a matter of law or outrageous government conduct. The trial court correctly denied Mr. Adams' motion to dismiss. Point (1) is denied.

## II. THE POSTCONVICTION PROCEEDINGS

Mr. Adams contends as his second point on appeal that the motion court clearly erred in denying as untimely filed his Rule 29.15 motion. Mr. Adams claims the absolute filing deadline imposed by Rule 29.15 denied him due process of law as guaranteed by the fourteenth amendment of the United States Constitution and article I, sections 10 and 14 of the Missouri Constitution.

Rule 29.15(b) states that "[i]f an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within thirty days after the filing of the transcript in the appeal." The rule provides further that "[f]ailure to file a motion within the time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under this Rule 29.15."

■ The Missouri Supreme Court has rejected Mr. Adams' constitutional challenges to Rule 29.15. *Day v. State*, 770 S.W.2d 692 (Mo. banc 1989), *cert. de-*

*nied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The time limitations of Rule 29.15 are both valid and mandatory. *Day,* 770 S.W.2d at 695. A movant's failure to file a Rule 29.15 motion within the time specified constitutes a complete waiver of the right to proceed under the rule. *Cowans v. State,* 778 S.W.2d 758, 762 (Mo. App.1989).

Mr. Adams filed a transcript in his appeal to this court on April 27, 1990. On May 31, 1990, Mr. Adams filed his *pro se* Rule 29.15 postconviction motion. Because Mr. Adams failed to file his Rule 29.15 motion within the thirty days provided by the rule, Mr. Adams has waived any right to proceed under the rule. Point (2) is denied.

Mr. Adams' third point (the timeliness of Mr. Adams' amended Rule 29.15 motion) and fourth point relied on (the effectiveness of Mr. Adams' trial attorney) are predicated on the validity of Mr. Adams' initial Rule 29.15 motion. As this Court has determined that Mr. Adams waived the right to proceed under Rule 29.15 when he failed to comply with subsection (b) of that rule, points (3) and (4) are also denied.

The judgment of conviction is affirmed. The judgment denying Mr. Adams' Rule 29.15 postconviction motion is affirmed.

All concur.