STATE of Missouri, Respondent,

v.

Richard C. SHANNON, Appellant.

No. WD 49368.

Missouri Court of Appeals,
Western District.

Jan. 10, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Stephen K. Nordyke, Butler, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., and HANNA and LAURA DENVIR STITH, JJ.

FENNER, Chief Judge.

Appellant, Richard Shannon, appeals his conviction after trial by jury for selling a controlled substance in violation of section 195.211, RSMo Supp.1993.

Shannon was arrested on October 12, 1993 and was charged by information with committing the class B felony of sale of a controlled substance. On December 17, 1993,

Shannon filed a motion to require the State to reveal any deal, agreement or understanding with any potential prosecution witness or informer and to disclose the identity of persons having knowledge about the recruitment and use of the informant. On this same day, Shannon also filed a Motion for Disclosure of Informant, asking the court to order the State to disclose to Shannon the identity and location of the "confidential informant" used by the State in this prosecution.

On February 11, 1994, the trial court entered its order denying Shannon's motions. The court found that Shannon's evidence failed to establish that he could not have a fair trial without disclosure of the identity of the informant. The court further found that Shannon's evidence did not even disclose that he was not aware of the name and whereabouts of the confidential informant, and the court was not going to require the State to disclose the name of a confidential informant already known to Shannon.

At trial, Officer Gary Vierrether was the only witness who testified for the State concerning the events that took place on December 23, 1992. Vierrether, an undercover police officer, testified that he frequently went to the Orange Street Saloon in Butler, Missouri (the Saloon), to meet with prospective drug sellers. On December 23, 1992, Officer Vierrether and an informant known as Jimmy Hill, an acquaintance of Shannon's, arrived at the Saloon at approximately 7:00 p.m. According to Vierrether's testimony, Shannon arrived at the Saloon at approximately 8:30 p.m. Officer Vierrether and the informant approached Shannon and they engaged in conversation. All three individuals were drinking at the time.

After approximately thirty minutes, the informant asked Shannon if Shannon knew where he and Vierrether could purchase some "crank" (the street name for methamphetamine, a controlled substance). According to Vierrether's testimony, Shannon said that he knew where he could get some and it was "pretty good stuff," but he did not let all of his friends in on it and he would have to check to see if he could get it. Shannon left the Saloon soon thereafter, at approximately 9:00 p.m., indicating that he would have to go check on it and get back with them later that night. Officer Vierrether and the informant stayed at the Saloon.

Officer Vierrether testified that he saw Shannon again back at the Saloon at approximately 10:30 that evening. According to Vierrether's testimony, Shannon asked Vierrether if he was ready to go. Vierrether indicated that he was ready to go and it was decided that Vierrether would drive and take his vehicle.

According to Vierrether's testimony, he, Hill and Shannon got into Vierrether's car. Vierrether drove with Shannon in the passenger seat and Hill (the informant) in the back seat. Shannon told Vierrether to drive toward Amoret and continued to give directions. Officer Vierrether stated that he pulled up to a house, in accordance with Shannon's directions, and stayed in the car while Shannon went to the front door of the house and entered the residence. Officer Vierrether testified that after approximately ten minutes, Shannon returned to the vehicle and said that "they have a couple of grams or could probably get an Eight Ball" [1] and "we would have to meet them out of town on a gravel road because they were leery about meeting new people."

Shannon got back into the vehicle and told Vierrether to drive to a location north of town. Vierrether told Shannon that he was "looking to get an Eight Ball." When the other vehicle arrived, Shannon got into that vehicle and drove away with the other individuals. The vehicle returned approximately fifteen minutes later. Shannon got back into Vierrether's vehicle and told Vierrether that "it weighed heavy and was real good stuff and the price would be three hundred fifty dollars." [2]

Officer Vierrether gave Shannon $350 but asked him to try to negotiate a lower price.

---

1. Officer Vierrether explained in his testimony that an Eight Ball is an eighth of an ounce or 3.5 grams.

2. Officer Vierrether explained that an Eight Ball weighs 3.5 grams and if someone says that it "weighs heavy," that means that you are getting a little more than 3.5 grams.

Shannon went back to the other vehicle and returned with the drugs giving the drugs to Officer Vierrether. Officer Vierrether, Hill, and Shannon then drove back to Butler. According to Vierrether's testimony, at one point Shannon wanted him to pull over so that Shannon could try some of the methamphetamine. Officer Vierrether pulled over and Shannon snorted some of the methamphetamine. Shannon offered some of the drug to Officer Vierrether who said that he would take care of himself when he got back to the bar. Shannon then offered some to Hill who "simulated taking it."

Vierrether, Hill and Shannon arrived back at the Saloon at approximately 12:30 a.m. Soon thereafter, Vierrether and Hill told Shannon that they were going to leave. Shannon followed them outside and told Vierrether that he wanted a "bump."[3] Apparently, this was after he asked Vierrether if he could purchase some of the drug which Vierrether refused to let him do because "there is other people's money involved." Vierrether, Hill and Shannon entered Vierrether's vehicle and Vierrether handed Shannon the packet from which Shannon took a portion and put it in a cigarette cellophane wrapper. After Shannon got the portion he wanted, he handed the packet back to Vierrether and left Vierrether's vehicle.

Shannon testified in his own defense at trial. Shannon admitted that he transferred the methamphetamine to Officer Vierrether in exchange for $350, which he gave to the two persons from whom he acquired the drugs. However, Shannon insisted that he did so reluctantly, and only after Hill repeatedly asked for his assistance in obtaining drugs. Shannon attempted to establish the defense of entrapment.

In his first point on appeal, Shannon argues that the trial court erred in refusing to require the State to provide the identity and location of the "confidential informant" (i.e., Jimmy Hill), who witnessed the transactions between Shannon and Officer Vierrether because the "confidential informant" was the sole neutral witness who could corroborate Shannon's testimony regarding his defense of

entrapment. Shannon contends that this refusal "amounted to the denial of [his] rights to due process and to compel the attendan[ce] of witnesses on his behalf."

Appellant argues that because Hill was the only other witness to the drug transaction and the discussion leading to the drug transaction, the refusal of the State to reveal Hill's identity and location denied him his "rights to due process of law and to compel the attendance of witnesses on his behalf," because Hill "was the sole neutral witness who could corroborate [the appellant's] testimony regarding his defense of entrapment."

▮ The determination of whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court. *State v. Sproul*, 786 S.W.2d 169, 171 (Mo. App.1990). In reviewing the trial court's ruling, an appellate court must balance the relevance of disclosure and its importance to the defense against the State's need for nondisclosure. *Id.* "It is the burden of the defendant to develop a record showing the need for disclosure." *Id.* (citing *State v. Payne*, 660 S.W.2d 24, 25 (Mo.App.1983)).

In *Sproul*, the appellate court upheld the trial court's refusal to require the State to disclose the identity of its informant, since the defendant "knew the informant's name and where he lived." *Id.* at 172. The court observed "[t]o have the [S]tate name him and say in a formal disclosure that he was the confidential informant who figured in arranging the drug sales would have given appellant nothing she did not already have." *Id.* The court further emphasized that there was no record to show that efforts were made to find the informant or that the informant was unavailable to the appellant before or during the trial. *Id.*

▮ In the case at bar, there is nothing in the record to show that Jimmy Hill was not the informant's real name. The appellant testified that he had been acquainted with Jimmy Hill for several years. There was testimony to show that appellant had

---

**3.** Officer Vierrether explained that a "bump" is a small portion of the drug that you are purchasing

that is used as a payment for the individual who set up the drug deal.

known of Jimmy Hill and that Hill's wife worked with appellant's sister several years earlier.

The only reference to Hill's true identity or location being concealed was by way of argument from appellant's counsel at trial that the State had concealed Jimmy Hill's identity and location. However, there is nothing in the record to support this argument of counsel. Arguments and statements of counsel are not evidence of the facts presented. *State v. Kelly,* 506 S.W.2d 61, 63 (Mo.App.1974).

There is also nothing in the record to show that appellant made any effort to attempt to locate Hill, interview him prior to trial, or attempt to subpoena him to testify at trial. Given that it was appellant's burden to develop a record showing a need for disclosure, the trial court did not abuse its discretion in overruling appellant's request for disclosure of Hill's identity and location.

Appellant's first point is denied.

In his second point on appeal, Shannon argues that the trial court erred in refusing to dismiss the charge against him because the government was guilty of outrageous conduct in that the government actively engaged in illegal conduct by providing Shannon with alcohol, providing funds to Shannon for the purchase of illicit drugs, and providing such drugs to Shannon.

█ Government over-involvement in criminal activity, if sufficiently outrageous, may violate the due process clause or fundamental fairness and bar prosecution even if the defendant was predisposed to commit the crime charged. *State v. Adams,* 839 S.W.2d 740, 744 (Mo.App.1992). Whether police involvement in the crime charged is so outrageous as to violate due process is a question of law for the court to determine. *Id.* at 743-44.

█ In making a determination of outrageous conduct, the court is not required to accept as true the defendant's self-serving version of the incident. *Id.* at 744. But, if the court finds from the credible and substantial evidence that the police, in fact, have engaged in outrageous governmental conduct, the proper remedy is the quashal of the prosecution. *State v. King,* 708 S.W.2d 364, 362 (Mo.App.1986). Factors tending to show outrageous conduct by police include:

(1) The manufacture by police of a crime which would not otherwise have occurred, (2) engagement by police themselves in criminal conduct, (3) use of appeals to humanitarian instincts, temptation of exorbitant gain or persistent solicitation to overcome the defendant's unwillingness to engage in the illegal activity and (4) a desire on the part of the police to obtain a conviction of the defendant without motive to prevent further crimes or to protect the public.

*Adams,* 839 S.W.2d at 744; *King,* 708 S.W.2d at 366.

█ The defense of outrageous governmental conduct will not apply if none of the evidence that incriminated the defendant was obtained by the conduct about which he complains, or if that conduct did not form the basis for the charges against him. *State v. Jay,* 724 S.W.2d 293, 295 (Mo.App.1987). In drug prosecutions, a defense of outrageous governmental conduct will not lie if the activity about which the defendant objects involves an "acceptable practice of law enforcement." *Brayfield v. State,* 738 S.W.2d 579, 581 (Mo.App.1987), quoting *King,* 708 S.W.2d at 367. Acceptable police practices in drug enforcement cases have been found to include the use of paid informants, who are also drug users, *Adams,* 839 S.W.2d at 744; *Jay,* 724 S.W.2d at 295-96, supplying the informants with the money to buy the drugs from the defendant, *King,* 708 S.W.2d at 367; *Jay,* 724 S.W.2d at 294, and allowing informants to use some of the drugs purchased from the defendant. *King,* 708 S.W.2d at 367.

█ In the case at bar, appellant complains first that Officer Vierrether testified that he "supplied [the appellant] with alcohol." Nonetheless, the record reflects that Officer Vierrether's testimony was that when he spoke with the appellant inside the Saloon, that the appellant had three beers, two of which he ordered himself, and one of which Jimmy Hill bought for appellant. Officer Vierrether also testified that the appel-

lant did not appear to be intoxicated. Appellant's argument that the purchase of alcohol constitutes outrageous governmental conduct is not supported by the record.

 Appellant next complains of outrageous governmental conduct because Officer Vierrether furnished appellant with the money to purchase the methamphetamine, drove him to the site where the sale occurred, and coached him on negotiating the purchase price. As stated previously, it has been held that it is not outrageous conduct for the police to furnish the funds to purchase drugs. Furthermore, the fact that the police provided appellant with transportation and that Officer Vierrether suggested to appellant that he attempt to negotiate a lower price for the drug transaction were merely efforts by Officer Vierrether to maintain control of the situation and further to maintain his cover and keep concealed his true identity as a police officer. Appellant's argument that this conduct constitutes outrageous governmental conduct is denied.

 Appellant's final complaint under his second point of outrageous governmental conduct was that Officer Vierrether allowed him to use some of the methamphetamine once while they were inside Officer Vierrether's vehicle and later as a "bump" for payment for his actions in obtaining the drugs. In *King,* a virtually identical argument was rejected.

In *King,* the defendant argued that the police had engaged in outrageous governmental conduct by allowing the informant and his unsuspecting companion to use some of the marijuana that had been purchased from the defendant. The court rejected that argument emphasizing that this conduct even if criminal, "was irrelevant to and unconnected with the criminal act of [the] appellant and could have had no influence at all on his choice to make the unlawful drug sale." *King,* 708 S.W.2d at 368. The only distinction between the case at bar and *King* is that in the case at bar the unlawful conduct was committed by the appellant, not the informant, who merely simulated use of the methamphetamine.

In the case at bar, Officer Vierrether testified that it was a "standard" practice for a buyer to give a "bump" to an individual who sets up a drug deal. It is not unreasonable to determine that Officer Vierrether's decision to allow appellant to use and later take a small portion of the methamphetamine was a necessary part of the undercover operation. If Officer Vierrether had refused to allow appellant to use a sample of the drugs or to take a "bump," the appellant might likely have become suspicious and undermined the drug investigation along with jeopardizing Officer Vierrether's cover.

Appellant's second point is denied and the judgment of the trial court is affirmed.

All concur.