STATE of Missouri, Respondent,

v.

Oliver Wayne POLLARD, Appellant.

No. WD 52625.

Missouri Court of Appeals, Western District.

April 1, 1997.

Irene Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BERREY and SMART, JJ.

BERREY, Judge.

Oliver Wayne Pollard appeals from his conviction for possession of a controlled substance with the intent to distribute pursuant to § 195.211, RSMo 1994. In a single point, appellant contends the trial court violated his due process rights upon overruling his Motion to Quash the Information because the evidence supporting the conviction was obtained by outrageous government conduct. We find that the tactics used by the Missouri Highway Patrol in this case fell within acceptable police practices. Affirmed.

In early 1995, law enforcement officials contacted appellant, a vocational shop teacher at Slater High School, regarding drug activities. On October 21, 1995, Troy Blunt, an undercover narcotics officer with the Missouri Highway Patrol, and David Richardson, a paid informant who had known appellant for about five years, met with appellant at his home. Richardson introduced Trooper Blunt as a truck driver named "Mike" who smuggled large quantities of marijuana from Texas. An offer was made to appellant to purchase one pound of marijuana. They negotiated a price of $1,200 for the marijuana and at some point during the conversation appellant said he could "get rid of it" quickly once it was delivered.

In the weeks following their initial meeting, Trooper Blunt called appellant on several occasions to find out if appellant had enough money. Appellant testified that

Trooper Blunt called him two or three times a week and repeatedly offered to sell him drugs. Appellant further testified that he rejected these offers because he did not want to jeopardize his teaching position. Yet, the evidence shows that appellant was eager and willing to purchase the drugs. For example, over the course of several phone conversations, appellant offered to pay $600 up front and to pay the balance later. He also offered collateral in exchange for the marijuana. Appellant also inquired whether Trooper Blunt would be interested in helping him sell the marijuana. Trooper Blunt told appellant that he did not "want to do that part."

Recognizing the trouble appellant was having at obtaining the money, Trooper Blunt offered to sell appellant a quarter pound rather than a full pound. However, appellant, allegedly at the suggestion of Richardson (the informant), later met with another man who agreed to give appellant the full amount of money to execute the deal. So when Trooper Blunt called appellant on November 3, 1995, appellant said that he wanted a full pound of marijuana. They then agreed to meet the following day at a truck stop off I–70 in Saline County. After first talking over a cup of coffee, they went around to the back of the truck stop where appellant purchased one pound of marijuana for $1,200. Immediately after the sale, appellant asked if Trooper Blunt wanted to go for a ride and smoke a joint. The trooper declined. Appellant was then arrested by Trooper Blunt and other state troopers who had been monitoring the sale. The marijuana used in this case was supplied by the Highway Patrol. A subsequent search of appellant's home revealed several plastic baggies with small amounts of marijuana and several empty baggies with marijuana residue.

On February 7, 1996, appellant moved to quash the information alleging outrageous government conduct. After an evidentiary hearing, the court overruled appellant's motion. The cause proceeded to trial. Appellant waived his right to a jury trial and testified in his own defense. At the close of evidence, Judge Ravenhill found appellant guilty of possession of a controlled substance with the intent to distribute. Appellant was later sentenced to a fifteen year term of imprisonment.

 In a court-tried criminal case, the standard of review is the same as it is in a jury tried case and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Rehberg*, 919 S.W.2d 543, 552 (Mo.App.1995). We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. *Id.*

 Appellant argues that the trial court erred in refusing to dismiss the charge against him because Trooper Blunt and the Highway Patrol committed outrageous government conduct in violation of the Fifth and Fourteenth Amendments and Article I, § 10 of the Missouri Constitution in that they solicited appellant, sold marijuana to him and the paid informant suggested that appellant contact the man who financed the transaction.

 "Government over-involvement in criminal activity, if sufficiently outrageous, may violate the due process clause or fundamental fairness and bar prosecution even if the defendant was predisposed[1] to commit the crime charged." *State v. Shannon*, 892 S.W.2d 761, 765 (Mo.App.1995). Whether law enforcement involvement rises to the level of outrageous government conduct is a question of law[2] for the court to decide. *Id.*

1. The defense of outrageous government conduct is distinct from the defense of entrapment because proof of a defendant's predisposition to commit the crime charged renders the defense of entrapment unavailable. *State v. Hohensee*, 650 S.W.2d 268, 270 n. 2 (Mo.App.1982). To prove entrapment, § 562.066.2, RSMo 1994 requires proof of both (1) inducement to engage in unlawful conduct and (2) an absence of willingness to

engage in such conduct. *See State v. Willis*, 662 S.W.2d 252, 255 (Mo. banc 1983).

2. Unlike the defense of outrageous government conduct, entrapment focuses on the subjective intent of the defendant to commit the crime charged and is a question of fact for the jury. *State v. Adams*, 839 S.W.2d 740, 743 (Mo.App. 1992).

Four factors are used to determine whether government conduct is outrageous:

(1) The manufacture by police of a crime which would not otherwise have occurred, (2) engagement by police themselves in criminal conduct, (3) use of appeals to humanitarian instincts, temptation of exorbitant gain or persistent solicitation to overcome the defendant's unwillingness to engage in the illegal activity and (4) a desire on the part of the police to obtain a conviction of the defendant without motive to prevent further crime or to protect the public.

*State v. King*, 708 S.W.2d 364, 366 (Mo.App. 1986). "One or more of these factors may be enough to brand the law enforcement conduct as outrageous." *Id.* at 366–67. In cases where government conduct is outrageous, the appropriate relief is quashal of the prosecution. *Id.* at 367.

To our knowledge, only one Missouri case, *State v. Hohensee*, 650 S.W.2d 268 (Mo.App. 1982), has found government conduct to be sufficiently outrageous. In that case, an undercover Springfield police officer, two other men, each of whom had substantial criminal records and received compensation from the Springfield Police Department for their participation as informants, and the defendant conspired to and in fact broke into a building. The defendant acted as the "lookout" while the undercover officer and two informants removed a safe from the building. Although this crime was staged by the police, the owner of the building neither consented to nor was even aware of the break-in. The defendant was the only member of the group who did not know that the break-in was being conducted under police sponsorship. A jury found the defendant guilty of second degree burglary and conspiracy. *Id.* at 269. On appeal, the court, held that the police sponsorship of the break-in was outrageous for the reason that the conduct of the undercover officer and the two paid informants was illegal. *Id.* at 274. The court accordingly reversed the defendant's burglary conviction. *Id.*

To prevail in this case, appellant must show that the challenged governmental conduct amounted to an unacceptable practice of law enforcement. *Shannon*, 892 S.W.2d at 765. "Acceptable police practices in drug enforcement cases have been found to include the use of paid informants, who are also drug users[;] supplying the informants with the money to buy the drugs from the defendant[;] and allowing informants to use some of the drugs purchased from the defendant." *Id.* (citations omitted).

Appellant specifically complains that the Highway Patrol illegally solicited him and sold drugs to him. We disagree. With the assistance of a paid informant, Trooper Blunt contacted appellant and he agreed to purchase drugs from the undercover highway patrolman. In fact, appellant admitted that he was a long-time drug user and that he had purchased controlled substances on numerous occasions. That appellant purchased marijuana from an undercover narcotics officer in this case is insignificant given his history of drug use because it is likely that he would have purchased drugs from someone else anyway. *See King*, 708 S.W.2d at 368. Moreover, even though appellant denied ever having sold drugs, there was evidence to the contrary, most notably his comment to Trooper Blunt that he could "get rid of" the marijuana quickly. Thus, we find no evidence that Trooper Blunt manufactured a crime which would not have otherwise occurred. Similarly, we find no evidence that appellant was tempted or improperly pursued by Trooper Blunt.

Appellant next contends that it was outrageous for the informant in this case to suggest he contact the man who ultimately provided him with the money to purchase the marijuana from Trooper Blunt. We disagree. Trooper Blunt testified that he had no knowledge of where the money came from and that, as far as he knew, no law enforcement funds were used to help appellant buy the marijuana. The identity of the man who financed this transaction was never revealed, but appellant did testify that this "buyer" was a friend of his. Thus, even if the informant did encourage appellant to contact this buyer, appellant's testimony that he and the buyer were friends strongly contradicts appellant's allegations of impropriety on the

part of the informant and the Highway Patrol on this issue.

Unlike in *Hohensee*, there is no evidence in this case of criminal conduct committed by the government. Trooper Blunt did possess marijuana, but § 195.371, RSMo 1994 protects law enforcement officers in drug enforcement cases against criminal liability where they act in good faith. *See King*, 708 S.W.2d at 368. The government activity in this drug case involved acceptable practices of law enforcement. Finally, there is no credible evidence which impugns the motives of Trooper Blunt or the Highway Patrol.

For the foregoing reasons, appellant has failed to establish the defense of outrageous government conduct as a matter of law.

Affirmed.

All concur.