STATE of Missouri, Respondent,

v.

John L. BUCKNER, Appellant.

No. KCD 27415.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

**388**

Willard B. Buch, Public Defender, Sixteenth Judicial Circuit, Robert A. Simons, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

The defendant was convicted for the armed robbery of taxicab driver Hatch and was sentenced to a term of imprisonment for five years in accordance with the verdict of the jury.

The conviction was returned on the evidence of witness Hatch that, as he stopped his Yellow Cab to discharge a fare, a young man [whom he identified as the appellant] engaged the conveyance and took a seat beside the driver. Immediately, two other men jumped into the backseat and directed Hatch to an address. As Hatch came to a stop at the designated destination, all three men announced it was a hold-up and loudly demanded his money. Hatch observed a gun held by one of the men in the backseat, and relinquished about $65 to them. He was commanded to go on, and pulled away leaving the trio standing on the sidewalk.

Hatch reported the incident to the police who initiated a search in which Hatch joined. The appellant was found standing on the sidewalk near the site of the robbery. He was taken into custody and while he and Hatch were alone momentarily in the police car, so Hatch related at the trial, the appellant offered: "If you don't testify against me I'll pay you anything you want". Upon cross-examination, Hatch disclosed that he had given a signed written statement to the police, but could not recall whether he had mentioned the offer attributed to the appellant at the trial.

The appellant Buckner took the stand and testified that he took no part in the robbery and that the other two, who were only casual acquaintances, got into the cab

without previous intimation; that he was unarmed and all the incidents of the robbery were perpetrated by the other two, from whom he fled in fear afterwards. The only words he spoke to Hatch while together in the police car were: "Man, it wasn't me that robbed you, I don't know who robbed you."

In advance of trial the appellant by motion formally requested, and the court granted, discovery of

Any written or recorded statements or the substance of any oral statements of all persons whom the prosecuting attorney intends to call as witnesses at the trial.[1]

In response, the State produced a copy of an unsigned statement of the witness Hatch, marked at the trial by appellant as his Exhibit 1. On cross-examination, counsel for appellant confronted witness Hatch with Exhibit 1, with the purpose of eliciting his acknowledgment that the statement was what it purported to be, a narrative to the police of the events leading to the charge, and to show that the statement made no mention of the offer attributed to the appellant by Hatch. After numerous objections by the prosecution, more jobation than orderly response, the court refused the exhibit as not the best evidence for the purpose intended since it was neither signed by the witness nor in his hand.

Counsel for the appellant resumed cross-examination of witness Hatch:

Q. Did you give a signed written statement to the police on that date or shortly thereafter?

A. Yes.

Q. And do you now recall whether or not you included mention of this conversation in that report?

A. I can't recall.

1. The trial was conducted prior to the effective date of Rules 25.30 through 25.45 but the Rules of Criminal Discovery were given effect to the proceedings by the accession of

Thereupon, Mr. Simons, counsel for appellant, and Mr. Edwards, the prosecutor, approached the bench for the following proceedings. [Our emphasis throughout]:

MR. SIMONS: Your Honor, at this time *I'm going to move the Court for a mistrial* based on the fact that *if a signed and written statement does exist in the hands of the police as the witness has just testified that I was entitled to receive a copy of that statement under the discovery rules* that have been enforced consistently in this jurisdiction during the past months in response to my discovery motion which was filed with the Court and which is part of the record of this case. I have received only this copy that Mr. Edwards has provided to me which is, as the Court has previously noted, unsigned and I was aware of no other report, signed or otherwise.

MR. EDWARDS: *You received exactly what the discovery calls for, the substance of anything that was applicable to the case.* I have provided you with copies of everything in our file. If you saw a report was not signed it is certainly up to you to find out if you wanted to use it or not use it and investigate your own evidence. It is not up to me. I provided you with the entire file including the copy you have just presented to the Court.

MR. SIMONS: Your Honor, I would like the record to reflect that I am not in any way or respect questioning Mr. Edwards' good faith in giving me what was in his file.

*I would like to point out that the request was made for written statements of witnesses if they existed.*

MR. EDWARDS: *It doesn't say signed statements of anyone.*

THE COURT: *This is what the motion for discovery called for, any written or recorded statements or the substance of* the State and the concurrence of the Court. The request posed by the defendant, and here cited, is the substance of the discovery allowed by Rule 25.32(A)(1).

*any oral statements of all persons the prosecuting attorney intends to call as witnesses at defendant's trial.*

MR. EDWARDS: Which they have received.

MR. SIMONS: I would contend to the Court that *the statement of this man as referred to is just such a statement and that I have not received it. All I have received is the one that I attempted to use in Court today.*

MR. EDWARDS: *Apparently you don't understand* the English language or you didn't listen to the Judge. *It doesn't say anything about the signed statement.* It gives the context or content of the statement. You have had both in this trial.

THE COURT: *The written statement would mean a signed statement,* either hand written by him or typed by somebody else and signed by him or hand written by somebody else and signed by him.

MR. EDWARDS: It does not say signed, Your Honor.

THE COURT: That doesn't make any difference. It said written or signed statement and *I think that a written statement means one that is signed by him or one which is not signed by him but written by him* because in the same sentence or the substance of any oral statement. (sic)

Now if this was an oral statement that somebody took down that's one thing and that is differentiated from the written statement.

[This colloquy on the mistrial motion of the appellant for failure of ·the State to make discovery of the signed statement described by witness Hatch· was then distracted by a comment of the prosecutor on the inadmissibility as evidence of Exhibit 1, the unsigned statement of Hatch, a ruling already made by the court and accepted by the appellant.]

MR. EDWARDS: In any event, your Honor, that doesn't relieve the defendant of the burden of best evidence.

THE COURT: I think that's true. It doesn't relieve him of the burden of the best evidence.

[The colloquy resumed with counsel for appellant probing the existence of, and reasserting his right to discover, a separate, signed statement by Hatch and the prosecutor and the court reconsidering the possible admissibility of the unsigned statement as evidence for purposes of impeachment.]

MR. SIMONS: *From what I can determine from this witness' testimony there is another statement other than the one I have been given.*

MR. EDWARDS: *I don't determine that at all.*

THE COURT: I suppose that you could hand this to him and ask him if he can tell whether or not from looking at it whether this is an exact copy of the statement that he gave to the police.

MR. EDWARDS: I think that is highly improper, your Honor.

THE COURT: I don't think so.

MR. EDWARDS: There is no way a man can say some months earlier this is not a copy, an identical copy of anything unless his signature is affixed thereto and is identical and signed on that date. He can say, yes, this is without any way to determine it actually is an exact copy but it still would not be admissible for the purposes as the defense attorney used it for. He has asked did he report it. That's all related.

MR. SIMONS: Your Honor, *the motion I have made now is broader in its application* and what Mr. Edwards is addressing himself—

MR. EDWARDS: You motion is so asinine. I directed it to your burden. It is not mine. You have the entire existence of this file.

MR. SIMONS: May I finish my statement?

MR. EDWARDS: Yes, you may.

MR. SIMONS: I am not questioning the existence of anything *I have no idea whether there is another written statement except for the fact that this witness has testified here that he did make a written and signed statement to the police and what Mr. Edwards provided me with a written and unsigned statement* (sic). *I must presume at this point that we are referring to two different statements and that I was, under my discovery motion filed with this Court under the rules of discovery, entitled to that other statement.*

I think the proposition is when a specific request for a defined item is set out and that that request isn't complied with I must not take it at face value but search further and look for something that hasn't been provided.

THE COURT: Discovery only tells you what you've got.

MR. SIMONS: *I was not informed there was a written and signed statement. I was given a copy of an unsigned statement.*

THE COURT: I think you can do just what I said. I compare this with a transcript from a prior trial where you hand the witness a transcript and open to a certain page and say, "did you make that statement?" Of course, you can only do that to impeach.

He hasn't said anything inconsistent yet. You are trying to impeach him and he hasn't made any inconsistent statements yet that he doesn't recollect or said anything specific about it.

MR. SIMONS: In that case, your Honor, it is my intention to show through this statement that he did in fact say something.

THE COURT: You can do that by putting the officer that took it on.

MR. EDWARDS: That doesn't make it a contradictory statement for impeachment purposes admissible, through a police officer. If the man says nothing, if he said "No, I didn't say that", he has now said,

"Yes, I did", you have a contradiction. If he says, "I don't remember", there is no contradiction there, that makes this impeachable evidence.

THE COURT: That's right. There is nothing inconsistent.

MR. SIMONS: Would the Court, for the record, rule my motion?

THE COURT: I sustain the objection of the prosecutor. The motion for mistrial is overruled.

The contention of the appellant, which we sustain, is that the order of the court allowing the motion for discovery imposed upon the State the duty to furnish him a copy of the written signed statement of the witness Hatch, and that the failure to make such discovery at the trial after the disclosure of the existence of such a statement, entitled the defendant to a new trial.

■ The response of the State, both at the trial and on this appeal, does not contradict the affirmation of the witness Hatch of a separate, written, signed statement, but seeks to evade production on the premise that the rules of criminal discovery do not require disclosure of a *signed* statement of a witness to be called for testimony, but only the substance of the statement. At the trial, the court properly ruled that *written statement* within the applicable rule of discovery [25.32(A)(1)] means "one that is signed by [the witness] or one which is not signed by [the witness] but written by him". Notwithstanding, the prosecutor continued to resist discovery of the signed statement, and the court did not insist on compliance.

■ The State appears to argue, however, that since the appellant did not intend to use the signed statement as original evidence but merely to impeach the witness Hatch, the failure of the prosecutor to make disclosure could not have been prejudicial. We do not fathom how the uses of information as yet undisclosed can be predicted so confidently. This argument mis-

construes the nature and purpose of Rules 25.30 through 25.45 as a code of criminal discovery. These rules promulgate a procedure, within constitutional definition, for mutual pre-trial disclosure between the parties in cases of felony. Their desideratum is a quest for truth which promotes informed pleas, expedited trials, a minimum of surprise and opportunity for effective cross-examination. American Bar Standards—Discovery and Procedure Before Trial, § 1.2; see, also, *State v. Scott*, 479 S.W.2d 438[1–3] (Mo. banc 1972); *State v. Harrington* (Mo.App., Springfield Dist., No. 9713, adopted June 9, 1975).

█ The obligation of the State for the disclosure of a written statement of a witness under Rule 25.32 must be read within this broad purpose of full and free discovery, which includes opportunity to the defendant to prepare in advance of trial for the cross-examination and impeachment of a witness by his own statement. There is no contention here that the written statement was not within the possession and control of the State, or that for some reason the State was not aware of its existence, but only an insistence that the requirements of the rule were met by the disclosure of the unsigned statement. In this, the State was in violation of both the rule and the order of the court.

█ On this appeal the State argues, as did the prosecutor at the trial, that in response to the order for discovery the defendant was accorded the entire prosecution file and that if the unsigned statement disclosed thereby intimated the existence of a signed statement by the witness Hatch, it was the initiative of the defendant to demand its production. This procedure would make of the present discovery rules only a parody of discovery. It would duplicate rather than simplify the obligations of counsel in the trial preparation [2] and defeat the public need for the efficient and just disposition of felony causes.

█ The final contention of the State iterates that the appellant owed another initiative for the written statement of the witness Hatch before he could claim the right to demand a mistrial. We have already determined that Rule 25.32 requires no other initiative by a defense counsel for the written statement of a witness than a written request served upon the prosecutor for such information within the possession and control of the State. Although the trial court recognized that the State had violated the discovery order, the court was somehow distracted from requiring compliance or adopting one of the corrective alternatives allowed by Rule 25.45.[3]

█ On this appeal, the question of a condign sanction remains. The only evidence to support the conviction was the testimony of witness Hatch. The trial theory of the prosecution was that the appellant, in concert with others, had perpetrated a robbery and that his offer to pay Hatch for his silence was an admission of that guilt. It was the testimony of the defendant, on the other hand, that he had engaged the taxicab without prior knowl-

2. Although the appellant initiated discovery of the statement of the witness by a formal discovery motion for that purpose, Rule 25.-32 contemplates that such be made by a written request by counsel for defendant upon the prosecutor. This procedure for out of court initiative is designed to conserve judicial resources for other work. See, American Bar Standards—Discovery and Procedure Before Trial, § 1.4.

3. Rule 25.45, which is a rescript of § 4.7 of the American Bar Standards—Discovery and Procedure Before Trial—provides: SANCTIONS

If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

edge of the criminal design of the other two, and that his only conversation with Hatch was a disclaimer of participation in the robbery. Simple fairness required that the defendant be allowed to meet this central issue of credibility by a copy of the written statement for disclosure of any variance in the court testimony of the witness relating to the events, including whether the subsequent statement related the offer of compromise attributed to the defendant at the trial. In these circumstances, the failure of the State to comply with the order of discovery—and of the court to require it—deprived the defendant of a fair trial, a prejudice which can be redressed only by a new proceeding. Rule 25.45.

The judgment is reversed and remanded for a new trial.

All concur.