STATE of Missouri, Plaintiff–
Respondent,

v.

Roxann M. BRADLEY, Defendant–
Appellant.

No. 18847.

Missouri Court of Appeals,
Southern District,
Division One.

July 25, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 9, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Chief Judge.

Roxann M. Bradley (defendant) was convicted, following a jury trial, of unlawful conversion of food stamps of a value of at least $150, a class D felony, § 578.379, RSMo Supp.1990, and one count of receiving stolen property of a value of $150 or more, a class C felony, § 570.080, RSMo 1986.[1] This court reverses and remands for a new trial.

Defendant's appeal is directed to the trial court's admission in evidence of a videotaped recording (state's exhibit no. 12) that she contends the state failed to disclose in response to requests for discovery; to the trial court's denial of a request for mistrial during the state's closing argument because of what defendant characterizes as a personal attack

1. Defendant was acquitted of five additional counts of receiving stolen property.

on her trial counsel; and to claimed outrageous governmental conduct in using "reprehensible informants to entice [her] into criminal activity."

Defendant was charged by criminal indictment filed October 4, 1991. Defendant's trial counsel entered his appearance on behalf of defendant October 11, 1991. Defendant's Request for Disclosure by Court Order was filed October 15, 1991. It sought, among other things, recorded statements of witnesses the state intended to call at trial, the right to inspect photographs or objects upon which the state intended to rely at trial, and a statement regarding whether "photographic or electronic surveillance" was conducted of conversations to which defendant was a party. Defendant's request for disclosure also sought names and addresses of participants in any such conversations, identification of law enforcement officers involved, recordings or written summaries of the conversations and information about the location of any such evidence. The trial court, on December 11, 1992, granted defendant's request for court ordered discovery.

Defendant filed a Motion to Suppress Video Tape (the first motion to suppress videotaped recordings) November 18, 1991. On December 11, 1992, it was passed for hearing. A written stipulation was entered into by the state and defendant that included:

> Defendant's Motion to Suppress Video Tape shall be considered by the Court as a Motion in Limine and the Motion shall be submitted to the Court by surrendering all tapes in question to the Court for the Court to view at its convenience and then rule on the Motion.

On Friday, April 2, 1993, defendant filed a further Motion to Suppress Video and Audio Tapes (the second motion to suppress videotaped recordings). In her second motion defendant alleged that the state "was ordered to supply such tapes to the Court in camera, particularly regarding those portions of the tape which are to be used"; that the state had not complied with the order; that defendant's trial attorney did not then "have sufficient time to make effective use of those portions of the audio and video tapes which the prosecutor [did] intend to introduce into evidence so that counsel [could] make appropriate objections."

On Monday, April 5, 1993, the morning trial was to commence, the trial court took up the first motion to suppress videotaped recordings. The trial judge advised the attorneys that he viewed five tapes that the state provided April 2, 1993, and he had problems with them. After further conversation the judge stated, "Well, the one problem I have is that the audio portion has a lot of—I'm sure the defense will agree with me—an awful lot of hearsay comments. I believe those would definitely be suppressible."

After further discussion with the attorneys, the trial court entered the ruling, "Court sustains in part and overrules in part Defendant's Motion to Suppress Video Tape by ordering that the audio portion of the video tape be expunged where Defendant is not present." The record does not reflect that the trial court ruled on defendant's second motion to suppress videotaped recordings.

Pre-trial proceedings concluded at 9:58 a.m., April 5. Trial commenced at 10:26 a.m. Prior to commencement of trial, no reference was made to any videotaped recording other than the five the state provided April 2, 1993, for the trial judge to review.

Defendant's trial attorney elected to make opening statement following that of the state. Defendant's opening statement emphasized that the state's case depended on the testimony of two informants who had long histories of drug addiction (one admitted to a drug habit costing $500 a day and the other to a drug habit costing $450 a day), stealing and welfare fraud. Defendant's attorney characterized the informants as "crack addicts, drugs [sic] users, shoplifters and thieves." He told the jury, "They've lied and cheated and stolen all the way, whatever serves their best interests."

Defendant's attorney criticized the police's involvement with the informants and discussed the videotaped recordings. He told the jury:

> Of course [the informants] don't have a driver's license, a lawful one, their privileges are revoked. They don't have insur-

ance on their vehicle. Yet the police department ... allowed them, on video tape, which apparently you're going to get to see, allowed them to drive a motor vehicle on the public streets of Springfield while they were revoked and at a time when they didn't have insurance, and drive in to this lady's place of business and try to talk her into buying property.

Defendant's attorney told the jury that defendant did not dispute everything on the tapes they would see, but did dispute "the spin that's been put by the prosecutor on some of the conversations on the tapes." Defendant's attorney added, "There are many, many conversations that [the informants] had with Roxanne [sic] Bradley that they didn't tape. The key conversations when they first went in to [sic] her stores—."

The assistant prosecuting attorney interrupted and requested to approach the bench. The prosecutor told the court, "I just wanted to warn [defendant's attorney] that the tapes he's talking about were found today in the property room. I didn't intend to offer them in evidence because at this late date the Court would probably not allow them. But if he puts testimony on in his case to that effect, then I'm going to put those tapes on in rebuttal."

Defendant's attorney continued with opening statement. He told the jury that there were·numerous conversations between defendant and the informants; that although one of the informants was wearing a recording device, the device "apparently didn't record the tape. Or if he did, it's never been disclosed to the defendant that the state has this." He added:

> For instance, the first time he came in to cash a check and has this big conversation with her around June 1st that she wants him to go out and start stealing and bring her things, that's not on tape. It's never been disclosed to us.

During trial two of the state's witnesses referred to a videotaped recording of the police informants' initial contact with defen-

dant—a May 31, 1991, meeting between defendant and the informants. The witnesses who testified about the May 31 videotaped recording were police officers Dana R. Carrington and David L. Asher.

Officer Carrington presented at least part of his testimony twice. His first testimony, although given in the presence of the jury, was not recorded "[b]ecause of a problem with the tape recorder."[2] A notation in the trial transcript states, "[T]he tape got twisted and did not record." After the malfunction was discovered, the trial court apparently permitted the state to start over.

Prior to commencement of the officer's second testimony, defendant objected "if he's going to mention the missing tape again that was just found yesterday." Defendant's attorney requested the court to declare a mistrial. He told the trial court that on April 2 "the state supplied the Court, in a paper sack, five video tapes and five audio cassette tapes that go with the video tapes." The attorney told the trial court that those were the only tapes that were produced; the only ones that were represented as tapes the state intended to use at trial. He told the court he was surprised by the state's reliance on another videotaped recording; that because the jury was told there was no recording of the May 31 conversation, defendant's case would be damaged "because the jury now speculates that we lied to them and that [defendant] made incriminating statements early on and solicited stolen property to be brought to her." He continued, "I don't know what the tape says. But I don't want to have to worry about it now. I'm in this trial.... I can't go back from what I said yesterday and retry it and take my words back, because the damage has been done."

Defendant's attorney repeated his request for a mistrial. Alternatively, he requested the trial court to "admonish the prosecutor not to mention this so-called missing tape on any other occasion, to exclude it from evidence herein, and to admonish further witnesses that they should not mention this tape." The trial court denied defendant's

---

2. The official court reporter who prepared the verbatim record of the trial uses the stenomask system of reporting.

requests and permitted Officer Carrington to testify about the May 31 videotaped recording.

Officer Carrington was asked the following questions by the prosecutor about the May 31, 1991, surveillance and gave the following answers:

Q. What did you do?

A. I set up surveillance on 1423 East Kearney for the purpose of audio and video taping conversations that took place inside.

Q. Who else was with you?

A. Detective Dave Asher.

Q. Anyone else in the van?

A. I don't believe so.

Officer Asher testified about the May 31, 1991, surveillance. He identified state's exhibit no. 12 as "a fair and accurate pictorial and audio recording" of events that occurred May 31, 1991, in connection with the two police informants' dealings with defendant at her place of business. Defendant's attorney renewed his objection to any reference to or use of the videotaped recording. The trial judge overruled the objection and agreed to "consider [the] objection continuing." At the conclusion of Officer Asher's testimony, state's exhibit no. 12 was offered and, over defendant's objection, admitted in evidence.

Facts related to closing arguments will be discussed elsewhere in this opinion.

Defendant's first point alleges the trial court erred by admitting state's exhibit no. 12 in evidence. Defendant contends the evidence "was produced in violation of discovery rules which prejudiced [defendant] and affected the outcome of the trial."

Rule 25.03(A) requires the state, upon written request by the attorney for a defendant in a criminal case, to disclose certain specified material and information. The material and information that Rule 25.03(A) requires the state to disclose includes:

Any books, papers, documents, photographs, or objects, which the state intends to introduce into evidence at the hearing or trial or which were obtained from or belong to the defendant;

Rule 25.03(A)(6). And,

If there has been any photographic or electronic surveillance (including wiretapping), relating to the offense with which the defendant is charged, of the defendant or of conversations to which the defendant was a party or of his premises; this disclosure shall be in the form of a written statement by counsel for the state briefly setting forth the facts pertaining to the time, place, and persons making the same;

Rule 25.03(A)(8).

Rule 25.04 provides for additional disclosure. Rule 25.04(A) permits a defendant in a criminal case to file written motion in the trial court "requesting the state to disclose material and information not covered by Rule 25.03." If the trial court finds that the request is reasonable, it "shall order the state to disclose to the defendant that material and information requested which is found ... to be relevant and material to the defendant's case." *Id.* Rule 25.04(B) directs the trial court to specify the material and information that is to be disclosed and the time and manner in which the state is to make the disclosure.

Defendant's motion for disclosure, although entitled "Defendant's Request for Disclosure by Court Order," sought material and information pursuant to both Rules 25.03 and 25.04. Although the record on appeal does not reveal that the trial court specified the exact material and information to be disclosed or the time and manner in which the state would be required to make disclosure, the court granted defendant's motion.

The state was required to provide defendant's attorney with a written statement reciting facts pertaining to when the electronic surveillance occurred, where it occurred and the identity of persons who participated in the recorded conversation. By not doing so, the state failed to comply with Rule 25.03(A)(3). The state had the further duty to provide defendant's attorney the opportunity to review state's exhibit no. 12 prior to trial. It did not do so.

Rule 25.16 states:

[T]he [trial] court may order such party [who has failed to comply with an applicable discovery rule or order issued pursuant thereto] to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

Defendant's attorney requested the trial court to impose sanctions for the state's failure to comply with requests for disclosure. The trial court denied defendant's request.

Application of Rule 25.16 by a trial court and appropriate appellate review is explained in *State v. Neil*, 869 S.W.2d 734 (Mo. banc 1994).

The [trial] court may impose sanctions for a party's failure to comply with an appropriate discovery request. Rule 25.16. Whether a sanction should be imposed for noncompliance is a matter that lies within the sound discretion of the trial court. *State v. Johnson*, 702 S.W.2d 65, 73 (Mo. banc 1985). When the court declines to impose a sanction, we must determine whether the State's discovery violation resulted in fundamental unfairness or substantively altered the outcome of the case. *Id.*

*Id.* at 738. *See also State v. Kilgore*, 771 S.W.2d 57, 66 (Mo. banc 1989).

The issue for determination is whether the trial court abused its discretion by denying defendant's request for mistrial or for an admonishment to the state for its witnesses not to mention the May 31, 1991, surveillance videotaped recording.

■ Rules of discovery in criminal cases "promulgate a procedure, within constitutional definition, for mutual pre-trial disclosure between the parties in cases of felony." *State v. Buckner*, 526 S.W.2d 387, 392 (Mo. App.1975). "The Rules of criminal discovery are not 'mere etiquette' nor is compliance discretionary." *State v. Luton*, 795 S.W.2d 468, 477 (Mo.App.1990).

Their desideratum is a quest for truth which promotes informed pleas, expedited trials, a minimum of surprise and opportunity for effective cross-examination. American Bar Standards—Discovery and Procedure Before Trial, § 1.2; *see, also, State v. Scott*, 479 S.W.2d 438(1–3) (Mo. banc 1972); *State v. Harrington*, (Mo.App., Springfield Dist., No. 9713, adopted June 9, 1975).[3]

*State v. Buckner, supra.* Disclosure through pre-trial discovery permits a defendant to prepare in advance of trial; to avoid surprises. *State v. Sappington*, 873 S.W.2d 618, 623 (Mo.App.1994).

"[P]rosecuting officials ... are not at liberty to act in a way that is fundamentally unfair to the defendant." *State v. Eaton*, 302 S.W.2d 866, 875 (Mo.1957). They may not convey incorrect or misleading information to a defendant. *State v. Kilgore, supra*, at 65; *State v. Collor*, 502 S.W.2d 258, 260 (Mo. 1973); *State v. Napolis*, 436 S.W.2d 645, 649 (Mo.1969).

■ The state's disclosure included five videotaped recordings of conversations between defendant and two police informants. The five videotaped recordings were produced to the trial court for review on the Friday immediately prior to the Monday when trial commenced. Defendant's attorney viewed the videotaped recordings the day before the trial court received them. The state represented that the five videotaped recordings were the only videotaped recordings of conversations between defendant and the two informants that the state would use as evidence at trial. Defendant's attorney was entitled to rely on that representation and to formulate a defense consistent with the information provided.

Knowing of the unsavory reputations of the two police informants, defendant challenged their credibility. Defendant's attorney's opening statement emphasized that the informants' reputations were ones of dishonesty and thievery; that they were unworthy of belief. Having seen the five videotaped recordings that the state produced, defen-

3. For the decision following transfer, *see State v.* *Harrington*, 534 S.W.2d 44 (Mo. banc 1976).

dant's attorney told the jury that the state had videotaped recordings of some conversations between defendant and the two informants but there were many other conversations that were not recorded. The jury was told that the interpretation the state put on the recorded conversations was the issue, not the tapes' contents. Defendant's attorney characterized the first conversation between the informants and defendant as their "key conversation."

After defendant's attorney stated that the first conversation was the "key conversation," the assistant prosecuting attorney interrupted. For the first time, defendant and the trial court were told that if defendant questioned the state's witnesses' accounts of the May 31, 1991, conversation, the state intended to present a videotaped recording of that conversation. The prosecutor told the court that the videotaped recording, state's exhibit no. 12, was "found ... in the property room" that very morning, the day the trial commenced.

The state seeks to uphold the trial court's admission of state's exhibit no. 12 in evidence on the basis that it did not fail to disclose its existence; that the fact there was a videotaped recording of the May 31, 1991, conversations was reported in a police report that had been shown to defendant's attorney, a report that is not part of the record on appeal.[4] The state does not refute that it represented to the trial court and to defendant's attorney, three days before trial commenced, that the only videotaped recordings it would use at trial were the five that it delivered to the trial court April 2, 1993.

In *State v. Harrington*, 534 S.W.2d 44 (Mo. banc 1976), a defendant sought, prior to trial, a copy of a statement he had given an FBI agent. The trial court granted a written motion that sought all written statements.

The day before trial began an FBI agent delivered Harrington's statement to the prosecuting attorney. The prosecutor did not supply a copy of the statement to the defendant's attorney. On the morning of trial the court directed that a copy of the statement be given to the defendant's attorney. At trial, defendant objected to testimony of the FBI agent who took the statement. The trial court overruled the objection and permitted testimony concerning the events addressed in the statement. Harrington was found guilty.

On appeal, the case was reversed and remanded for new trial. The supreme court found, "We hold that under the circumstances of this case the failure of the State to deliver a copy of defendant's statement to his attorneys *prior to trial* was fundamentally unfair and resulted in prejudicial error. The case must be reversed and remanded for new trial." *Id.* at 48. The court rejected the state's contention that the conviction should not be reversed because "the prosecuting attorney made a diligent effort to obtain the FBI document"; that "defense counsel could have journeyed to Chicago and deposed [the FBI agent] prior to trial or submitted interrogatories to the agent." *Id.* at 46. The court summarily dismissed the state's argument. Quoting *State v. Scott*, 479 S.W.2d 438 (Mo. banc 1972), the court pointed out the importance of a defendant having "a decent opportunity to prepare in advance of trial." 534 S.W.2d at 46.

Here, as in *Harrington*, defendant was entitled to have the opportunity to formulate a defense in advance of trial. The state's failure to produce state's exhibit no. 12 for review prior to trial denied defendant that opportunity. The state, nevertheless, attempts to justify its use of state's exhibit no. 12 by contending the exhibit was used to rebut defendant's attorney's attack on the credibility of the state's informants; that the state was entitled to use the exhibit because the attorney told the jury there was no recording of the May 31, 1991, conversation.

4. The argument portion of the state's brief states that it "allowed [defendant's] counsel to see everything in the state's file"; that "[t]his disclosure informed [defendant's] counsel of the existence of State's Exhibit No. 12." The brief includes what is represented to be a quotation from "the original case report, which was in the file from the day of indictment." The quoted narration states that one of the informants was "wired" on *March* 31, 1991, and instructed to go to defendant's store. It reports that on "5/31/91" defendant arrived at the store and narrates the substance of alleged conversations.

A similar situation existed in *State v. Buckner, supra,* regarding a signed statement by the defendant. The state attempted to introduce an unsigned narration written by law enforcement personnel of a statement purportedly given by the defendant in the case. A copy of the unsigned "statement" was in the prosecuting attorney's file. Defendant's attorney had been permitted to review the file. The trial court sustained defendant's objection to introduction of the unsigned statement in evidence. The state then produced a signed copy of the statement. The state argued that it had not intended to use the signed statement "as original evidence but merely to impeach" a witness; that, therefore, the prosecutor's failure to disclose the statement was not prejudicial. *Buckner,* 526 S.W.2d at 391.

The court concluded that if the state's position that discovery rules were met by a prosecuting attorney opening its files for review by a defendant's attorney was upheld, "[t]his procedure would make of the present discovery rules only a parody of discovery." *Id.* at 392. The court added, "It would duplicate rather than simplify the obligations of counsel in the trial preparation and defeat the public need for the efficient and just disposition of felony cases." *Id.* (Footnote omitted.) The analysis in *Buckner* is apropos to this case.

This court holds that, in the circumstances of this case, the trial court abused its discretion in admitting state's exhibit no. 12 in evidence. Defendant was entitled to rely on the state's representation that only the five tapes produced April 2, 1993, would be used in evidence. State's exhibit no. 12 was not one of those tapes. The case must be reversed and remanded for new trial with respect to the two charges of which defendant was found guilty.

Although Point I is dispositive, the issues raised by Points II and III could arise on retrial. For that reason, a brief discussion of those issues is warranted.

Defendant's Point II alleges the trial court erred in not granting defendant's motion to dismiss for government misconduct. Defendant contends the state's actions in this case "were outrageous in that it used reprehensi-

ble informants to entice [defendant] into criminal activity when the state had no information [defendant] was predisposed to that activity."

■ "[O]utrageous government conduct concerns the overinvolvement of the police in the commission of a crime and is a question of law for the court." *State v. Adams,* 839 S.W.2d 740, 743–44 (Mo.App.1992).

Facts tending to show outrageous conduct by police include the following:

> (1) the manufacture by police of a crime which would not otherwise have occurred, (2) engagement by police themselves in criminal conduct, (3) use of appeals to humanitarian instincts, temptation of exorbitant gain or persistent solicitation to overcome the defendant's unwillingness to engage in the illegal activity and (4) a desire on the part of the police to obtain a conviction of the defendant without motive to prevent further crime or to protect the public.

*Id.* at 744, quoting *State v. King,* 708 S.W.2d 364, 366 (Mo.App.1986). An outrageous conduct defense is based on a defendant's right to due process. *State v. Hohensee,* 650 S.W.2d 268, 269 (Mo.App.1982).

The police informants about whom defendant complains assisted the police in thwarting developing markets for stolen property. The police department attempted to quash outlets where stolen goods were readily sold. The informants' lifestyles did not create markets for stolen property. Their unsavory reputations afforded the informants access to the markets. In that respect, this case is similar to *State v. Jay,* 724 S.W.2d 293 (Mo.App.1987).

In *Jay* the court found that although an informant who assisted law enforcement officers in the case was reprehensible, the distasteful elements of his lifestyle did not constitute components of the crime for which the defendant was prosecuted. The facts in *Jay* were contrasted to those in *State v. Hohensee, supra,* in which an undercover officer orchestrated criminal activity and assigned the accused a role in it.

In this case, as in *Jay*, the police informants' personal histories were repulsive. However, their acknowledged past lifestyles were not components of the crimes with which defendant was charged. The state's involvement with the informants did not violate any protected right of defendant. The use of the police informants did not deny defendant due process of law. *See State v. Hohensee*, 650 S.W.2d at 271. The trial court committed no error in denying defendant's motion to dismiss for governmental misconduct.

Defendant's final point, Point III, is directed to comments by the prosecutor during closing argument that defendant characterizes as a "personal attack on defense counsel."

During closing argument for defendant, her attorney criticized the police department's involvement with informants such as the ones who testified in this case. The attorney stated the police should be ashamed of its conduct in this case. Later, in the final segment of the state's closing argument the prosecutor stated, "The police department is not sleeping on the job. We have drug cases running out of our ears. *And he [referring to defendant's attorney] represents some of them,* he knows that." (Emphasis added.)

Defendant's attorney objected that the statement was improper argument. The trial court overruled the objection. The prosecutor then suggested that defendant's attorney's argument would be different if the attorney were representing the police informants. Defendant's attorney requested mistrial. The trial court denied the request.

Clearly, the assistant prosecuting attorney's statements were not supported by the evidence that was before the jury. Allowance of similar statements personally degrading to defense attorneys, without any basis in the record, have been held to constitute trial error. *See State v. Greene*, 820 S.W.2d 345 (Mo.App.1991); *State v. Burnfin*, 771 S.W.2d 908 (Mo.App.1989); *State v. Hornbeck*, 702 S.W.2d 90 (Mo.App.1985). The state would

be well-served to avoid such exchanges upon retrial.

Defendant's convictions and sentences are reversed and remanded for new trial.

MONTGOMERY, J., concurs.

SHRUM, J., concurs in separate opinion filed.

SHRUM, Judge, concurring.

I concur in the principal opinion. I write separately, however, to state what I believe to be the prejudicial aspects of the admission into evidence of State's Exhibit 12, the recording of the May 31, 1991, conversation.

Had the assistant prosecuting attorney informed the court and defense counsel prior to trial of the discovery of Exhibit 12 and the other tapes, defense counsel would have had the opportunity to seek a continuance in order to have, in the words of the *Harrington* and *Scott* opinions, "a decent opportunity to prepare in advance of trial." [1]

By waiting until defense counsel had, in opening statement, told the jury that the "key conversations" were not recorded, the assistant prosecuting attorney was in a position to unfairly brand Defendant and her counsel as liars.

The assistant prosecuting attorney told defense counsel and the court that he would use the tapes "in rebuttal" *if* the defense put on testimony about unrecorded conversations. Despite this declaration of intention, the assistant prosecutor used Exhibit 12 in the state's case in chief.

Disregarding Exhibit 12, there was strong evidence of guilt in this case. Thus it is particularly unfortunate that the convictions must be reversed because the assistant prosecuting attorney did not simply notify defense counsel and the court prior to trial of the existence of Exhibit 12 and the other tapes and then permit defense counsel to seek relief as provided in the rules of court.

---

1. A pre-trial hearing also would have permitted the court to learn the details of the discovery of the tapes. The assistant prosecuting attorney's words, "the tapes he's talking about were found today in the property room," appear a carefully chosen use of the often ambiguous passive voice. Moreover, I find it curious the assistant prosecutor apparently had the tapes at trial when he "didn't intend to offer them in evidence...."

I am unwilling to agree with the state that the error can be dismissed as harmless.