**STATE of Missouri, Plaintiff–Respondent,**

v.

**Casey Alton SIMMONS, Defendant–Appellant.**

**No. SD 31179.**

Missouri Court of Appeals,
Southern District,
Division One.

April 10, 2012.

Ellen H. Flottman, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Mary H. Moore, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Casey Alton Simmons ("Defendant") appeals his conviction, following a jury trial, for conspiracy to commit murder in the second degree, in violation of section 564.016.[1] Defendant argues the trial court erred by improperly denying his motion to dismiss, which claimed that the prosecution was founded in outrageous government conduct, and the trial court plainly erred by failing to *sua sponte* modify Instruction No. 5, which instructed the jury on the elements of conspiracy to commit murder and mirrored MAI–CR 3d 304.10. Finding no merit in Defendant's arguments, we affirm.

### Factual and Procedural History

Defendant was charged by information and found guilty by a jury of the class B felony of conspiracy to commit murder in the second degree. Following the jury's verdict, Defendant was sentenced by the Jasper County Circuit Court to nine years' imprisonment. The evidence at trial revealed the following:

Defendant contacted his ex-wife, Misty Simmons, and told her he wanted to kill Kimberlee LeClair ("Kim").[2] Kim had claimed that Defendant was the father of her child. Misty spoke with a friend, Andrea Wahl, and expressed concern that Defendant was going to kill Kim because of the baby. Andrea was the ex-girlfriend of Duane George, a Jasper County Deputy Sheriff. After the conversation with Misty, Andrea contacted Deputy George

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. First names of some of those involved are used for clarity. No familiarity or disrespect is intended.

and told him that Misty was concerned that Defendant was going to kill Kim. In response, Deputy George contacted Misty, and Misty stated to him that she was concerned that Defendant was going to kill Kim. Misty then agreed to cooperate in an investigation, and Deputy George referred the matter to his supervisor.

Detective Mike McDonald was assigned to the case. He was informed by Detective Sergeant Ron Thomas that Misty wanted to speak with him. Detective McDonald knew Defendant because they had worked together previously, and he initially believed the matter could be resolved because Misty was merely an angry ex-spouse wanting revenge. After speaking with Misty, Detective McDonald asked her to set up a meeting with Defendant and wear a wire to record the conversation; Misty agreed.

Misty arranged a meeting with Defendant, and the two met in a cemetery. During Misty's meeting with Defendant, Detective McDonald and another officer, Officer Haynes, listened and recorded the conversation. Defendant told Misty he wanted to murder Kim and stated that although the murder would be easy, disposal of the body would be difficult. Defendant also stated they would need to "package the body well" and then discussed wrapping the body in Saran Wrap, putting the body in a sports bag, covering the body in lime, and wrapping the body with tarps. Defendant discussed manually choking Kim, knocking Kim out with an object, and standing on Kim's neck while choking her with a rope. Defendant also stated he would need rubber gloves, a pair of size 12 shoes to throw away, and would need to burn his clothes after committing the murder to get rid of trace evidence.

After Misty's meeting with Defendant in the cemetery, the Jasper County Sheriff's Department gave Misty a $50.00 Wal-Mart gift card, which was to be used to purchase items needed to commit the murder. Misty met with Defendant again, and they went to a Wal-Mart. Following the instructions of Detective McDonald, as Misty and Defendant approached the register, Misty excused herself, went to the restroom, and called Detective McDonald. Video surveillance at Wal-Mart showed Defendant checking out at the register and paying for the items in his cart. Defendant exited the store, walked to Misty's car, and was arrested. The items purchased by Defendant included a large tarp, large trash bags, duct tape, and size 12 shoes. Defendant was charged with conspiracy to commit murder in the second degree.

At trial, defense counsel filed a motion to dismiss, claiming outrageous government conduct; the trial court denied this motion. At the close of the state's case and at the close of all the evidence, defense counsel moved for a judgment of acquittal; the trial court denied the motions. During the trial, Defendant claimed he had no intention to kill Kim and that he only talked about killing Kim and purchased the items they had talked about because he thought Misty would want to have sex with him if he did. The jury returned a verdict of guilty and recommended a sentence of nine years' imprisonment. Following the jury verdict, defense counsel again moved for a judgment of acquittal, or in the alternative, for a new trial on the basis of outrageous government conduct and improper jury instruction. These motions were denied, and the trial court sentenced Defendant to nine years' imprisonment. Defendant timely appealed.

## Discussion

### No Outrageous Government Conduct

 Defendant's first point asserts that the trial court erred in denying Defendant's motion to dismiss because the prosecution was "founded in outrageous

government conduct." Outrageous government conduct concerns the over-involvement of police in a crime and may violate a defendant's due process rights and violate the principle of fundamental fairness. *State v. Shannon,* 892 S.W.2d 761, 765 (Mo.App.1995). Whether government activity breaches the threshold of outrageous conduct is a matter of law and is reviewed by this court *de novo.*[3] *State v. Bradley,* 882 S.W.2d 302, 308 (Mo.App. 1994); *State v. Adams,* 839 S.W.2d 740, 743–44 (Mo.App.1992); *State v. King,* 708 S.W.2d 364, 366 (Mo.App.1986); *State v. Hohensee,* 650 S.W.2d 268, 272 (Mo.App. 1982). Because, however, "[t]he weight of the evidence and the credibility of the witnesses is for the trial court's determination[,]" *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990) (citing *State v. Brown,* 762 S.W.2d 471, 474 (Mo.App. 1988)), questions of fact are reviewed in the light most favorable to the decision rendered by the trial court. *See State v. Pollard,* 941 S.W.2d 831, 833 (Mo.App. 1997); *see also Adams,* 839 S.W.2d at 744. Therefore, where the parties disagree about what activities the government or its agents performed, this court will review the facts in the light most favorable to the trial court's decision.

■ Where government involvement in a crime rises to the level of outrageous conduct, the proper remedy is to quash the prosecution. *King,* 708 S.W.2d at 367. To prove outrageous government conduct, a defendant must prove that the government conduct about which he complains formed the basis for the charges in the prosecution. *Shannon,* 892 S.W.2d at 765 (citing *State v. Jay,* 724 S.W.2d 293, 295 (Mo.App. 1987)). Additionally, where police officers engage in generally accepted police prac-

tice, there is no outrageous government conduct. *See Collins v. Mo. Dir. of Revenue,* 2 S.W.3d 164, 168 (Mo.App.1999).

■ Factors "branding police conduct as outrageous" include:

(1) the manufacture by police of a crime which would not otherwise have occurred, (2) engagement by police themselves in criminal conduct, (3) use of appeals to humanitarian instincts, temptation of exorbitant gain or persistent solicitation to overcome the defendant's unwillingness to engage in the illegal activity and (4) a desire on the part of the police to obtain a conviction of the defendant without motive to prevent further crime or to protect the public.

*King,* 708 S.W.2d at 366. "One or more of these factors may be enough to brand the law enforcement conduct as outrageous." *Id.* at 366–67.

■ Of these four factors, Defendant argues only the first—the manufacture by police of a crime which would not otherwise have occurred. Defendant contends "it was not until Misty went to Duane, a deputy sheriff ... that [Defendant] was *induced to commit an overt act* which established the conspiracy," and that "it only became a conspiracy to murder when [*Defendant* ] followed his ex-wife into Wal–Mart[.]" (Emphasis added).

*Hohensee,* 650 S.W.2d 268, is the only Missouri case where government activity was found to constitute outrageous conduct. *See Pollard,* 941 S.W.2d at 834. In *Hohensee,* this court held government conduct to be outrageous when two known criminals were hired by the police department to commit a break-in and robbery, and an officer of the police department assisted the two criminals in removing sto-

3. "Unlike the defense of outrageous government conduct, entrapment focuses on the subjective intent of the defendant to commit the crime charged and is a question of fact for the jury." *State v. Pollard,* 941 S.W.2d 831, 834 (Mo.App.1997) (citing *State v. Adams,* 839 S.W.2d 740, 743 (Mo.App.1992)).

len property from the building they had burgled. *Id.* at 269. The defendant sat half a block away from the scene of the burglary as a lookout and was the only one of the four men unaware of the joint venture with the police department. *Id.* The defendant was also the only one charged with burglary. *Id.* In reaching our determination that such police involvement breached the generally accepted practices of law enforcement, we noted that the criminal activity at issue—the burglary— was accomplished by government agents. *Id.* at 274. We also noted, "[i]f the government agents had not been there, doing their illegal acts, defendant's conduct would not be illegal." *Id.* Moreover, we acknowledged that it was "difficult to conceive a situation where the government's involvement could be greater or the defendant's could be less." *Id.* Although this court reversed the defendant's conviction for burglary, we upheld his conviction for conspiracy to commit burglary of another house with the same three men because

> *defendant gave* his companions a map of the house, including the location of a safe therein. The four men rode to the house in a car *driven by defendant,* and *defendant pointed the house out* to the others. Because a vehicle was parked in the yard, indicating the house was occupied, the men returned to the undercover house. *Defendant then gave* the telephone number of the house to [one of the three men]. [That man], *at defendant's request,* telephoned the number and the phone was answered, indicating the house was still occupied....

*Id.* at 275 (emphasis added).

Applying our *Hohensee* analysis, in *State v. Jay,* 724 S.W.2d 293, 295 (Mo.App.1987), we found government conduct was not outrageous when police hired an informant who was wanted in a neighboring state and arrested during the undercover operation, was an admitted drug user, had a female companion described as a "concubine," and

was paid over $6,000.00 by police during the course of the operation. Specifically, this court noted "[a]n obvious and fundamental difference exists between the instant case and *Hohensee.* Here, none of the evidence that incriminated defendant was obtained by the conduct about which he complains, nor was such conduct the basis for either of the charges against defendant." *Id.* We also acknowledged, "[t]he instant case is merely another illustration of the harsh reality that law enforcement agencies must, of necessity, utilize unsavory characters[.]" *Id.* at 296. Similarly, in *Shannon,* the court held "[t]he defense of outrageous governmental conduct will not apply ... if that [government] conduct did not form the basis for the charges against him." 892 S.W.2d at 765 (citing *Jay,* 724 S.W.2d at 295).

Also applying our analysis in *Hohensee,* the court in *King,* 708 S.W.2d at 365, found government conduct was not outrageous when an informant told police about a dealer allegedly selling drugs, and the police used the informant to make undercover drug purchases at the suspected location. The informant was given money by the police and was also provided with a car to use. *Id.* The informant proceeded to purchase marijuana from the defendant on two separate occasions, and the defendant was subsequently charged with two criminal counts. *Id.* Rejecting the defendant's claims of outrageous government conduct, the *King* court held that the defense of outrageous conduct was inapplicable because "[t]he activity by the police which resulted in the charges against appellant involved acceptable practice of law enforcement." *Id.* at 367; *see also Brayfield v. State,* 738 S.W.2d 579, 581 (Mo.App. 1987). Similarly, in *Adams,* 839 S.W.2d at 744, the court rejected a claim of outrageous conduct because "[t]he police did not engage in criminal conduct, for the activity which resulted in the charges against [the defendant]."

In the present case, Defendant alleges four outrageous government activities:

1. Duane and the Jasper County Sheriff's Department wired Misty and told her to get [Defendant] to talk about the "plan."

2. They gave her a fifty dollar Wal–Mart gift card.

3. Misty told [Defendant] that they were going to get a hotel room, told him about the Wal–Mart gift card, and implied that they were going to use it for purchases on their night of romance. In the car on the way to Wal–Mart they discussed sex and politics. There was no talk of any conspiracy to murder.

4. Misty went to the bathroom in Wal–Mart at the instruction of the Jasper County Sheriff's Department, leaving [Defendant] literally holding the bag.

(Internal citations omitted). Unlike the facts in *Hohensee*, the activities of the police and their agents enumerated by Defendant in the instant case, do not form the basis for the criminal charges for which Defendant was prosecuted. Defendant was not prosecuted because the Jasper County Sheriff's Department wired Misty but rather because of what he said in his recorded conversation with her. Likewise, Defendant was not prosecuted because Misty was given a Wal–Mart gift card or because he went to Wal–Mart with her; nor was he prosecuted because Misty went to the restroom and left Defendant at the register. Rather, as acknowledged in Defendant's own brief to this court, he was prosecuted because he committed an overt act—purchasing items which he had previously discussed using to murder Kim— which then established the conspiracy. The analyses in *Jay* and *Shannon, supra,* are directly applicable to the instant case, and because the activity of the police and their agents did not form the basis of the

charges against Defendant, the defense of outrageous government conduct is not applicable. Moreover, as with the conspiracy charge in *Hohensee*, which this court upheld, it is *Defendant's behavior* of planning a murder and *Defendant's purchasing* of items to commit that murder, coupled with *Defendant's recorded statements,* rather than the activity of the police or their agents, which support the charge of conspiracy.

Additionally, counter to the facts in *Hohensee,* the activities of the police or their agents enumerated by Defendant in the present appeal are not criminal. Wiring a witness, giving the witness money, allowing the witness and the potential defendant to travel together, and having the witness leave while the potential defendant commits a criminal act are not criminal activities. Applying the analyses used in *King* and *Adams, supra,* the factual distinction between police criminal activity in *Hohensee* and non-criminal police activity in the instant case strips Defendant's first point of any merit. Moreover, Defendant makes no claim and offers no authority to support a conclusion that the police activities about which he complains breached standard law-enforcement practices. The police activity here does not rise to outrageous government conduct. *See King,* 708 S.W.2d at 367–68; *Collins,* 2 S.W.3d at 168. Defendant's first point is denied.

### No Plain Error in Giving Instruction No. 5

Defendant's second point on appeal argues that the trial court plainly erred by failing to *sua sponte* modify Instruction No. 5, which directed the jury as to the findings necessary to convict Defendant of conspiracy to commit murder. The verdict director was based on MAI–CR 3d 304.10,[4] and read, in pertinent part:

4. MAI–CR 3d 304.10 states, in pertinent part,

First, that (on) (on or about) (at some time

If you find and believe from the evidence beyond a reasonable doubt: First, that at some time or times between October 1, 2008 and November 4, 2008,

> in the County of Jasper, State of Missouri, the defendant agreed with Misty Simmons that one or more of them would commit the offense of murder of Kimberlee LeClaire and

Second, that defendant so agreed with the purpose of promoting that offense, and

Third, that in furtherance of that agreement one or more of such persons thereafter

> engaged in the following act: purchased over-sized tennis shoes, a tarp, duct tape and trash bags from Wal-Mart on November 4, 2008,

then you will find the defendant guilty of conspiracy to commit murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt *each and all* of these propositions, you must find the defendant not guilty of conspiracy to commit that offense.

(Emphasis added).

Defendant contends that the second element should have read, "Second, that the defendant so agreed with the purpose of promoting *the commission of* that offense[.]" Defendant argues that the omission of the words "the commission of" ren-

ders the verdict director improper because it does not comport with section 564.016(1) and, thus, denied Defendant a fair trial consistent with his due-process rights.

▄▄▄ At trial, Defendant did not object to this instruction. Where a party does not object to a jury instruction at trial, appellate review is limited to plain error. Rule 30.20; *State v. Hayes*, 23 S.W.3d 783, 788 (Mo.App.2000) (citing *State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. banc 1995)); *State v. Shurn*, 866 S.W.2d 447, 465 (Mo. banc 1993).

Rule 30.20 is no panacea for unpreserved error[ ] and does not justify review of all such complaints[ ] but is used sparingly and limited to error that is evident, obvious, and clear. Not all prejudicial error—that is, reversible error—can be deemed plain error. A defendant's Rule 30.20 burden is much greater—not merely to show prejudice[ ] but manifest injustice or a miscarriage of justice—which in this context means outcome-determinative error.

We are not required to review for plain error; to do so is within our discretion. The two-step analysis is (1) did the trial court commit evident, obvious, and clear error affecting the defendant's substantial rights; and (2) if so, did such plain error actually result in manifest injustice or a miscarriage of justice? Unless a

---

or times between) [*date or dates*], in the (City) (County) of ——, State of Missouri, the defendant agreed with [*name or names of co conspirator(s) if known . . .* ] that (they) (one or more of them) (would commit) the offense of [*State the specific offense and its object, such as "murder of John Doe," or "robbery of Jane Smith," or "selling heroin to ultimate users."*] and

Second, that defendant so agreed with the purpose of (promoting) (facilitating) (committing) that offense, and

Third, that in furtherance of that agreement (the defendant) (the defendant and one of such person) (the defendant and one or more of such persons) (one of such persons) (one or more of such persons) thereafter engaged in (one or more of) the following act(s); [*Concise statement, with appropriate date or date, of one or more overt acts committed in furtherance of the conspiracy, using more than one paragraph if necessary.*], [*Set forth more than one overt act in subparagraphs alphabetically labeled.*] then you will find the defendant guilty (under Count ——) of conspiracy to commit [*name of offense*].

defendant gets past the first step, any inquiry should end.

*State v. Smith,* 293 S.W.3d 149, 151 (Mo. App.2009) (internal quotations and citations omitted).

 Even if alleged instructional error is properly preserved, prejudice to the defendant must be apparent for a jury instruction to constitute a sufficient ground for reversal on appeal. *State v. Thomas,* 75 S.W.3d 788, 791 (Mo.App.2002) (citing *State v. Perry,* 35 S.W.3d 397, 398 (Mo. App.2000)). Instructional error, however, rarely rises to the level of plain error because plain error requires more than mere prejudice. *State v. Roe,* 6 S.W.3d 411, 415 (Mo.App.1999). Plain error requires the defendant prove the jury instruction resulted in "manifest injustice." *Id.* Similarly, a jury instruction is only plainly erroneous if it "so misdirect[s] or fail[s] to instruct the jury so that it is apparent that the instructional error affected the verdict." *State v. Deck,* 994 S.W.2d 527, 540 (Mo. banc 1999).

 Although Defendant's second point asserts that Instruction No. 5 resulted in manifest injustice because MAI–CR 3d 304.10 conflicts with the substantive law set out in section 564.016.1, Defendant's brief fails to offer any cogent argument supporting this alleged conflict. Defendant's argument merely states the language of MAI–CR 3d 304.10, quotes authority for rejecting MAI–CRs that conflict with substantive law, argues for why an inappropriate instruction could harm Defendant, references statements made by the prosecutor, and then quotes section 564.016.1. Nowhere does Defendant argue, much less demonstrate, why the omission of the language "the commission of" in the second element of Instruction No. 5 improperly instructed the jury in the first instance. This court cannot make that argument for Defendant because appellate courts do not function as

an advocate for any party to an appeal. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978); *State v. Harrison,* 539 S.W.2d 119, 121 (Mo.App.1976).

 Nevertheless, facially, Defendant's point has no merit. Section 564.016.1 provides that "[a] person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense." Based on this statutory language, Defendant contends that the omission of the phrase "the commission of" in the second element of the verdict-directing instruction renders that element a misstatement of the law. This narrow focus on just one element of the instruction, however, is misguided because when assessing whether a jury instruction misled the jury, the instruction in question is considered in conjunction with all the other instructions. *See Deck,* 994 S.W.2d at 540–41 (citing *State v. Weaver,* 912 S.W.2d 499, 518 (Mo. banc 1995); *State v. Petary,* 790 S.W.2d 243, 245 (Mo. banc 1990)).

Here, the first element of the challenged instruction required the jury to determine if Defendant "agreed with Misty Simmons that one or more of them would *commit* the offense of murder[.]" (Emphasis added). The second element then required the jury to find that Defendant "*so agreed* with the purpose of promoting *that* offense." (Emphasis added). Because these elements were conjunctively submitted to the jury, in order to find Defendant guilty, the jury was required to find that Defendant acted with the purpose of promoting the agreement to *commit* the offense of murder, thereby satisfying all the requirements of section 564.016.1, albeit in some-

what of a different order than that set forth in section 564.016.1.

Nothing in Instruction No. 5 thwarted Defendant's defense, supported by his testimony at trial, that he never intended to commit the offense of murder. If the jury believed Defendant, then it would have found that Defendant did not have the requisite intent with which to have agreed with Misty that one or both of them would *commit* the offense of murder as required in the first element of Instruction No. 5.

Finding no evident, obvious, and clear error in giving Instruction No. 5, this court's plain-error review ends. *See Smith,* 293 S.W.3d at 151. Defendant's second point is denied.

The trial court's judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.